[No. H011573. Sixth Dist. Apr. 17, 1995.]

JOHN BILLMEYER, as Trustee, etc., et al., Plaintiffs and Appellants, v. PLAZA BANK OF COMMERCE et al., Defendants and Respondents.

## COUNSEL

Morrissey Law Firm, Michael T. Morrissey, W. Bartley Anderson and Martin Occhipinti, Jr., for Plaintiffs and Appellants.

Gray, Cary, Ware & Freidenrich, Peter M. Rehon, Lisa C. Roberts and Shannon F. Fallon for Defendants and Respondents.

## OPINION

**PREMO, Acting P. J.**—Plaintiffs John Billmeyer, trustee for the bankruptcy estate of Coast Range Transport, Inc. (hereafter, Coast Range), and Dennis and Nancy Kendall sued defendants Plaza Bank of Commerce (now Comerica Bank-California) (hereafter, Plaza) and Pamela Bogle for losses allegedly caused by defendants' lending practices which forced Coast Range into bankruptcy. The trial court granted defendants' motion for summary judgment holding that (1) Billmeyer's claims were barred by res judicata (and federal exclusive jurisdiction principles), and (2) the Kendalls' claims were barred by the statute of limitations and standing principles. On appeal, plaintiffs dispute the trial court's application of the law. We affirm the judgment.

### SCOPE OF REVIEW

The parties agree on the material facts. Defendants were therefore entitled to judgment if their contentions as to the applicability of the law are correct.

(*Pacific Auto. Ins. Co.* v. *Wolff* (1977) 72 Cal.App.3d 537, 540 [140 Cal.Rptr. 164].)

## BACKGROUND

The Kendalls owned Coast Range, a trucking business that they began in 1981. Plaza obtained Coast Range's banking business in 1986. In 1988, federal deregulation of the trucking business required those in the industry to cut costs to compete. Plaza assisted Coast Range in cost-saving measures so as to prevent Coast Range's credit line loans from going into default. According to plaintiffs, Plaza's assistance was intrusive and restrictive. Coast Range defaulted on the loans. It filed a voluntary petition under chapter 11 of the United States Bankruptcy Code in December 1988.

Coast Range's statement of financial affairs, filed in connection with the petition, listed Plaza as a secured creditor as to $190,000 and an unsecured creditor as to approximately $5,400. It did not indicate that these debts were contingent, unliquidated, or disputed as required by the bankruptcy rules if this was, in fact, the case. Nor did it disclose as an asset any claim or counterclaim against Plaza.

On March 2, 1989, the bankruptcy court ordered Plaza relieved from the automatic stay of proceedings against a bankruptcy debtor as the stay pertained to the personal property that secured Plaza's loans to Coast Range. The order authorized Plaza to proceed with "any and all actions and legal proceedings effecting [*sic*] the Collateral," such as foreclosure, taking possession, and liquidation. The order described the collateral as: "All of the debtor's pre-petition accounts receivable, inventory, money, deposit accounts, equipment, vehicles, trailers, machinery, fixtures, office equipment, furniture, furnishings, tools, dies, jigs, general intangibles, and all proceeds therefrom." The order also expressly bound all parties to the bankruptcy proceeding, their heirs, assigns, and successors, including any trustee appointed in any converted or superseding bankruptcy case.

On June 8, 1989, the bankruptcy court ordered the case converted from chapter 11 (reorganization) to chapter 7 (liquidation). It appointed Billmeyer as trustee at some point.

On June 12, 1989, via stipulation between Plaza and Coast Range made before the case was converted, the bankruptcy court ordered a lien in favor of Plaza against the postpetition assets of Coast Range (chiefly accounts receivable) in consideration for certain postpetition payments made by Plaza on behalf of Coast Range. The court specified that the lien was of the same

type already held by Plaza under its loan agreements with Coast Range. In this regard it found that Coast Range had defaulted under the terms of the loan agreements by failing to make loan payments and cure overdrafts, making a total amount due Plaza of $63,922.

On August 18, 1989, Plaza filed a proof of claim pursuant to the Bankruptcy Code setting forth a claim against Coast Range in the amount of $60,093.15. Coast Range made no objection to this claim, and the claim therefore became "allowed" by operation of law.

Also on August 18, 1989, Billmeyer filed a report of no distribution which asserted that Billmeyer had (1) neither received any property nor paid any money on account of the estate, and (2) made diligent inquiry into the whereabouts of property belonging to the estate and found no property available for distribution.

On February 9, 1990, the bankruptcy court approved Billmeyer's report and ordered the estate closed.

On May 2, 1990, Coast Range and the Kendalls filed this action alleging various causes of action, such as breach of the loan agreements and fraud, arising from the course of dealing between Coast Range and Plaza. The gist of the complaint focused upon alleged improper activities that served as the catalyst for the bankruptcy filing.[1] Plaza successfully demurred to the bulk of the complaint on the basis that the claims belonged to the bankruptcy estate. The trial court granted the Kendalls leave to amend as to individual claims for interference with economic relationship, intentional infliction of emotional distress, and negligent infliction of emotional distress.

On December 7, 1990, upon Billmeyer's application, the bankruptcy court ordered the chapter 7 case reopened. The application stated in total: "Comes now JOHN BILLMEYER, Trustee and respectfully represents: [¶] Applicant was the duly appointed, qualified, and acting trustee of the estate of the above named debtor corporation. [¶] That applicant files herewith his application to reopen the within proceedings. [¶] There are no funds held in trust by applicant. [¶] WHEREFORE, applicant prays for an order that the case be reopened and that the filing fee be waived."

On February 1, 1991, Billmeyer applied to the bankruptcy court for authorization to employ special counsel. The application asserted, in relevant

---

[1]Plaza allegedly told Coast Range that it would not require strict compliance with the loan agreements but nevertheless applied monies in Coast Range's accounts against loan balances and dishonored checks and took control over Coast Range's receivables and instituted tight controls thus damaging Coast Range's reputation and driving it out of business.

part: "Among the creditors of the Debtor is Plaza Bank of Commerce . . . . A dispute has arisen between the Debtor and Plaza . . . . Debtor, through its authorized representatives, believes that it has suffered damages as a consequence of acts, representations or omissions of Plaza . . . ." The application then recites that the debtor and trustee agreed to permit the employment of an attorney "to pursue litigation against Plaza" and the attorney had agreed "to represent the interest of the estate of the Debtor on the following conditions: [¶] [contingency fee compensation terms]." It then continues that the debtor and trustee believe that the attorney is qualified to "effectively prosecute any claims against Plaza . . . ." The attorney referred to was Coast Range's and the Kendalls' attorney who filed this action.

On March 28, 1991, the bankruptcy court ordered appointment of Coast Range's and the Kendalls' attorney as special counsel "in those matters regarding the dispute between the Debtor and Plaza . . . ."

On October 9, 1991, Billmeyer and the Kendalls filed a second amended complaint in this proceeding. This complaint is the one at issue. It essentially resurrects the "lender liability" theories previously dismissed due to Coast Range's and the Kendalls' lack of standing and restates the Kendalls' individual claims.

### BILLMEYER'S LENDER LIABILITY CLAIMS

Because of the Bankruptcy Code requirements to disclose the whole spectrum of a petitioner's financial affairs, "courts that have considered the effect of a debtor's failure to disclose a potential lender-liability lawsuit in a bankruptcy proceeding have universally held that the debtor is equitably estopped, judicially estopped or barred by res judicata[2] from bringing the action after confirmation of the bankruptcy reorganization plan. [Citations.] [¶] Those decisions rely primarily upon the well-established requirement that a debtor seeking the benefits of bankruptcy must fulfill the companion duty of fully disclosing and scheduling all property interests and rights so that the bankruptcy court and creditors can make an informed decision about the

---

[2]In analyzing similar issues to those at bar one court has prefaced: "For the sake of simplicity, we will refer to this general concept as 'judicial estoppel,' although other relevant cases use the terms 'equitable estoppel,' '*res judicata*,' 'waiver,' or 'quasi-estoppel' to justify similar holdings." (*Caplener* v. *U.S. Nat. Bank* (1993) 317 Or. 506, fn. 12 [857 P.2d 830, 837].) We agree that the lender liability cases in the bankruptcy context use the several types of issue preclusion concepts sometimes interchangeably and sometimes one to the exclusion of another. (See also *Littlefield* v. *Union State Bank* (N.D. 1993) 500 N.W.2d 881, 883 and citations therein.) Thus, though we may refer to one or another theory by a specific term, we consider the issue in this case to implicate the general concept of issue preclusion as applied to claims in the bankruptcy context.

debtor's proposed reorganization plan."[3] (*Littlefield* v. *Union State Bank*, *supra*, 500 N.W.2d at p. 883.)

■ "The federal doctrine of judicial estoppel precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding. 'Thus, the "essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." [Citation.]' [Citation.] The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. [Citations.] The doctrine does not require reliance or prejudice before a party may invoke it." (*Southmark* v. *Trotter, Smith & Jacobs* (1994) 212 Ga.App. 454 [442 S.E.2d 265, 266-267].)

■ Here, there is no question that Coast Range failed to disclose its lender liability cause of action in its bankruptcy proceeding. Although Billmeyer notes that the bankruptcy proceeding in this case has been re-opened, he also acknowledges that orders within a bankruptcy proceeding such as those confirming the sale of estate properties can be, in and of themselves, sufficient for issue preclusion purposes. (*Matter of Baudoin* (5th Cir. 1993) 981 F.2d 736, 742, fn. 14.)

Billmeyer cites no authority contrary to the universal rule noted above. He merely poses what we distill as three arguments why issue preclusion should not apply to bar prosecution of his lender liability claim.

### 1. *Bankruptcy Court Approval of State Court Action*

Billmeyer contends "that in the instant case the Bankruptcy Court has approved the pursuit of the lender liability claims by [Coast Range's] bankruptcy estate in the state court forum." He refers to the order for authorization to employ special counsel.

Plaza disputes that the bankruptcy court has "approved" any particular action in any court. More importantly, however, it correctly points out that neither the bankruptcy court's order nor the trustee's application for the order raises or disposes of the question whether issue preclusion bars the claim against Plaza. Thus, even if the bankruptcy court "approved" this action, the approval has no bearing on whether issue preclusion bars the

---

[3]Coast Range concedes that the disclosure requirement is likely more imperative in a liquidation case like this one "since the whole purpose of a Chapter 7 proceeding is to marshall [*sic*] and liquidate all of the Debtor's non-exempt assets and distribute them pro rata to the creditors."

action. The order for authorization to employ special counsel is therefore of no moment.

## 2. *No Final Judgment*

Billmeyer next contends that there is no final judgment in the res judicata sense.[4] He claims that the interim orders in this case, i.e., the orders terminating the automatic stay and for security interests in postpetition assets, are insufficient for issue preclusion purposes.[5]

We observe that the order terminating the automatic stay is comprehensive. The order (1) implicitly determines that Coast Range was in default of its loan agreements and owed Plaza a liquidated amount of money;[6] (2) gives Plaza all of Coast Range's prepetition property, including intangible property (the intangible property presumably includes the lender liability cause of action since there is no contrary indication); and (3) authorizes Plaza to do whatever it wanted with the property and keep all moneys realized without further court order.

Billmeyer nevertheless counters that there is no evidence that Plaza made any effort to sell the lender liability chose in action.[7]

Again, however, the language of the order allows Plaza possession of all Coast Range's prepetition property. There is no mandate that Plaza sell the

[4]"The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies." (*In re Intl Nutronics, Inc.* (9th Cir. 1994) 28 F.3d 965, 969.)

[5]Billmeyer contends at the threshold that an order terminating an automatic stay does not have preclusive effect as a matter of law. He cites footnote 13 of the opinion in *Matter of Baudoin, supra,* 981 F.2d at page 742. Billmeyer's analysis is erroneous. Footnote 13 alerted that "[t]here is disagreement about which judgments are at issue. The Baudoins and [the corporate debtor] present their case from the position that the judgment claimed as preclusive by the Bank is that which modified the automatic stay and allowed the Bank to foreclose on [the corporate debtor's] accounts receivable. The Bank, however, has never based its preclusion claim on that judgment. . . . The Bank asserts, instead, that the Baudoins' claim is barred by the judgments ordering and confirming the sale of real estate in the Baudoins' personal bankruptcies, and allowing the Bank's proof of claim in the . . . corporate bankruptcy. We will analyze only the preclusive effect of those judgments asserted by the Bank as *res judicata*." (*Ibid.*) Thus, the preclusive effect of an order terminating an automatic stay was not at issue in *Baudoin*. In any event, it is axiomatic that the preclusive effect of a bankruptcy court's order depends upon the scope of the order. (See *Matter of Federal Shopping Way, Inc.* (9th Cir. 1983) 717 F.2d 1264, 1270-1271.)

[6]The order for security interests makes this determination explicitly.

[7]Plaza does not make the argument, but it appears that Billmeyer's suit is barred at the threshold, i.e., the bankruptcy estate does not own the lender liability claim since Plaza succeeded to the claim by virtue of the stay relief order. Billmeyer's argument that Plaza made no effort to sell the lender liability chose in action implicitly recognizes that Plaza, not he, owns the claim.

property. It follows that the property was granted to Plaza whether to keep or sell. That Plaza made no effort to sell the lender liability cause of action is therefore of no moment.

Billmeyer also counters that resolution of the lender liability claims was neither necessary nor appropriate at the times the orders were obtained. Trial of the lender liability claims, so the argument goes, could not feasibly have been accomplished in the short time in which the orders were sought; and the stipulation that Coast Range was in default, without stipulating the reason, should not foreclose a claim that the cause of the default was because of Plaza's conduct.

We agree with the courts that have rejected similar arguments.

In the case of *In re Intl Nutronics, Inc., supra,* 28 F.3d 965, the court addressed the question whether bid-rigging and antitrust claims brought by a trustee on behalf of a bankrupt estate were barred by the res judicata effect of a bankruptcy court's sale order.

There, the trustee rejected separate bids for property submitted by two competitors and asked the two for new bids. The competitors learned that they were the only bidders and submitted one new bid as a joint venture that was less than the previous bids. The trustee accepted the joint bid and sought an order approving the sale without making objection to the joint venture. The bankruptcy court issued an order unconditionally confirming the sale.

Twenty-two months later the trustee sued the competitors in federal district court claiming that the joint venture transgressed the antitrust law. The district court granted summary judgment to the competitors. On appeal, the trustee principally argued that the antitrust claims could not have been asserted in the sale order proceeding because antitrust claims were not what is known in bankruptcy parlance as "core" proceedings, i.e., claims falling within the bankruptcy court's exclusive jurisdiction. The court explained that the point was irrelevant because the bankruptcy court can hear noncore matters that are "related" to a bankruptcy case. It concluded: "Thus the claim could have been asserted at the time of the proceeding confirming sale, and this opportunity is sufficient to satisfy that requirement of the doctrine of res judicata." (*In re Intl Nutronics, Inc., supra,* 28 F.3d at p. 969.) The trustee also argued that res judicata did not apply because the order confirming the sale was a routine and perfunctory matter far too narrow in scope to constitute the same cause of action as the antitrust claims. The court rejected the argument. It rested on the claim that the collusive behavior of the competitors was known to the trustee at the time he sought confirmation of

the sale and was apparent on the face of the bid. It reasoned that the unlawful collusion should have been brought to the bankruptcy court's attention since there is little purpose in confirming a sale if a court cannot determine whether the terms of the sale are in the best interests of the estate. It observed that the sale confirmation proceeding was perfunctory and narrow only because the trustee chose not to make it otherwise. (*Id.* at p. 970.)

The issue arose in the lender liability context in *Oneida Motor Freight, Inc.* v. *United Jersey Bank* (3d Cir. 1988) 848 F.2d 414. In *Oneida*, a reorganization case, the bank sought relief from the automatic stay and an order establishing the validity and extent of the bank's lien. The bankruptcy court issued a series of orders including orders that detailed the amount and validity of the lien. It then confirmed the debtor's plan of reorganization. The debtor made no reference to a lender liability claim in the plan and none was made in the confirmation order. Seven months later the debtor sued the bank in state court for allegedly causing it to file bankruptcy. The action was then removed to federal district court, and the debtor amended its reorganization plan to provide that one-third of anything realized by it in the lender liability action would be paid to the creditors. The district court dismissed the complaint on the basis of issue preclusion and the Third Circuit affirmed.

One of the debtor's arguments on appeal was that it had no obligation to raise the lender liability claim when the bank sought relief from the automatic stay. It cited authorities for the proposition that a motion for relief from stay is not the proper setting for adjudication of a counterclaim. The court rejected the argument. It noted that while stay proceedings may not be proper for adjudication of a counterclaim, a party may nevertheless raise it for consideration at that time. It also observed that a subsequent hearing on the debtor's request to use cash collateral, opposed by the bank, provided a forum to air the claim as did the hearings resulting in the orders determining the amount and validity of the bank's claims. The court concluded: "Although [the debtor] may be technically correct in its argument that it was never *procedurally* compelled to raise its claim, we are satisfied that its failure to mention this potential claim either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution precludes this later independent action. Even absent a specific mandate to file a counterclaim, complete disclosure is imperative to assist interested parties in making decisions relevant to the bankrupt estate." (*Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra*, 848 F.2d at p. 419.)

Here, Coast Range not only could have raised its lender liability claim in the stay relief proceedings but should have raised the issue. At most, its failure to do so allowed the claim to be conveyed out of the estate. (*Ante*, fn.

7.) At the very least, Coast Range knew about the claim and failed to raise it in the stay relief proceedings when Plaza was liquidating the Plaza-Coast Range debtor-creditor relationship.

### 3. *Concealment of Lender Liability Claim in Bankruptcy Action*

Billmeyer finally contends that "[t]he common thread of the estoppel . . . cases . . . is that the Debtor should have pursued the claim *for the benefit of the creditors*, but instead attempted to sneak it through the bankruptcy (by nondisclosure) and then pursue the lender liability claim for the Debtor's own personal benefit—in effect attempting to steal the fruits of the lender liability lawsuit from the Debtor's creditors."[8] In contrast, so the argument goes, that is not the case here.[9]

Although many of the cases invoking issue preclusion do pose fact patterns where the debtor tried to sneak a claim through bankruptcy before personally pursuing it, not all of the cases so pose. (See, e.g., *In re Intl Nutronics, Inc.*, *supra*, 28 F.3d 965 [action brought by trustee].) And some of the cases holding that issue preclusion barred the debtor's lender liability action accept that the bankruptcy estate would benefit if the suit was permitted to proceed and resulted in a recovery. (See, e.g., *Oneida Motor Freight, Inc.* v. *United Jersey Bank*, *supra*, 848 F.2d at p. 416, fn. 1 [plan modified so that creditors would benefit from recovery]; *Matter of Baudoin*, *supra*, 981 F.2d at p. 739, fn. 6 [parties agreed that cause of action belonged to the trustee and trustee had been substituted as a party plaintiff].)

In summary: Coast Range failed to mention in its bankruptcy case that it had any claims against Plaza, and Plaza obtained final bankruptcy orders liquidating its claims against Coast Range and giving Plaza all of Coast Range's tangible and intangible property; the authorities uniformly hold that under these circumstances a subsequent lender liability suit alleging that the bank was the catalyst for the bankruptcy is barred under one or another form of issue preclusion; Billmeyer cites no authority to the contrary. It follows that the trial court correctly granted Plaza's motion for summary judgment against Billmeyer.

---

[8]Billmeyer also adds that Plaza did not "show that it detrimentally relied upon any of the earlier events that it now claims gave rise to an estoppel." We reiterate that issue preclusion under the guise of judicial estoppel does not require reliance or prejudice before a party may invoke it. (*Southmark* v. *Trotter, Smith & Jacobs*, *supra*, 442 S.E.2d at pp. 266-267.) It is a doctrine to protect the integrity of the judiciary. (*Ibid.*)

[9]It is certainly arguable that Coast Range and the Kendalls concealed Coast Range's lender liability claims in the bankruptcy case just to personally pursue them in this case. The trustee is a party to this action only because the trial court sustained Plaza's demurrer based upon lack of standing.

## THE KENDALLS' CAUSES OF ACTION

In connection with the causes of action for intentional and negligent infliction of emotional distress, the Kendalls concede that all of Plaza's alleged outrageous conduct toward them occurred in 1988 before Coast Range filed bankruptcy. Since they filed this action in May 1990, the one-year statute of limitations for personal injury actions bars their claims.

The Kendalls contend, however, that they nevertheless raised a triable issue whether their claims were timely. They rely upon *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal.Rptr. 565], wherein the court stated: "Whether the defendant's conduct was outrageous and whether the plaintiff's emotional distress was severe are generally questions of fact, and where, as here, the conduct complained of is continuing in nature encompassing a period of several years and the emotional distress alleged is also of a continuing nature, the point at which the defendant's conduct has become sufficiently outrageous and the plaintiff's emotional distress sufficiently severe for the plaintiff to state a cause of action will be questions of fact."

*Murphy* does not assist the Kendalls. In that case the plaintiff wrote the defendant a letter complaining of emotional distress as a result of the defendant's handling of an insurance claim and the unsatisfactory repair to the plaintiff's home and personal property "to that time." (*Murphy* v. *Allstate Ins. Co., supra*, 83 Cal.App.3d at p. 50.) There was a factual dispute whether the date of the letter was more than one year before the plaintiff filed suit. Relevant to this case, however, the conduct complained of in *Murphy* was "continuing in nature encompassing a period of several years." (*Id.* at p. 51.) In this context, the court concluded: "Even if we knew the correct date of Mr. Murphy's letter, we cannot say as a matter of law that the conduct complained of at that time was sufficiently outrageous or that the emotional distress mentioned was sufficiently severe to compel the conclusion that plaintiffs' cause of action had then accrued." (*Ibid.*)

Here, in contrast, the conduct complained of, by the Kendalls' own admissions, was not "continuing in nature"; it ended in December 1988, more than one year before the filing of this action.

As a fallback argument the Kendalls assert that their emotional distress causes of action should be subject to the three-year statute of limitations for trespass. They maintain that the causes of action allege that defendant Bogle "committed an illegal trespass, including opening and taking mail belonging to [Coast Range]." They then continue: "An action for damages for trespass includes damages for emotional distress." They rely on *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265 [288 P.2d 507].

The Kendalls' analysis is erroneous.

In *Kornoff*, the plaintiffs sued their neighbor for nuisance and trespass due to the neighbor's operation of a cotton gin. On appeal from a judgment for the plaintiffs, the defendant argued that damages for discomfort and annoyance were erroneously awarded since there was no personal injury. In this context, the court stated: " 'Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom.' " (*Kornoff* v. *Kingsburg Cotton Oil Co.*, *supra*, 45 Cal.2d at p. 272, citing *Herzog* v. *Grosso* (1953) 41 Cal.2d 219, 225 [259 P.2d 429].)

First, the Kendalls cite no authority for the proposition that the concepts of annoyance and discomfort from a trespass and emotional distress from an intentional or negligent act are equivalent.

Second, *Kornoff* makes clear that the annoyance and discomfort damage component in a trespass action pertains to the annoyance and discomfort of the occupant of the land that was damaged by the trespass. Here, the trespass described by the Kendalls is a trespass to the land of Coast Range, not the Kendalls.

And third, *Kornoff* has nothing to do with the statute of limitations. It therefore does not stand for the proposition that emotional distress damages caused by a trespass more than one year before filing suit but less than three years can be recovered in the face of a limitations argument.

In short, the Kendalls cite no authority for the proposition that a trespass to the land of another can give rise to a personal injury emotional distress cause of action; nor do they cite authority for the proposition that a personal injury claim for emotional distress can be maintained under the guise of a trespass so as to avoid the bar of the one-year personal injury statute of limitations. It follows that the trial court correctly granted Plaza's motion for summary judgment as to the Kendalls' causes of action for intentional and negligent infliction of emotional distress.

██ Concerning the cause of action for interference with economic relationship, the Kendalls alleged that defendants made harassing telephone calls to them and Coast Range's employees, bounced payroll checks, broke into Coast Range's office and attempted to break into desks, stole mail, verbally assaulted the office staff, bounced checks for business expenditures, and made threatening and insulting telephone calls in addition to calling daily about billings, receivables, and deposits. These actions allegedly caused

business disruption. The second amended complaint then alleges: "As a proximate result . . . the bankruptcy estate has suffered damages in an amount to be determined according to proof at the time of trial."

The trial court granted Plaza's motion on the ground that the Kendalls lacked standing to prosecute the cause of action.

We agree with the trial court's conclusion. The complaint expressly pleads that it was the bankruptcy estate, not the Kendalls, who suffered damages. (*Gantman* v. *United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1569 [284 Cal.Rptr. 188] ["A motion for summary judgment addresses the question whether there are dispositive material facts which are not in dispute. [Citation.] '[M]ateriality depends on the *issues in the case*; evidence which does not relate to a matter in issue is *immaterial*. [Citations.] [¶] What matters are in issue (and consequently material) is determined mainly by the pleadings, the rules in pleading and the substantive law relating to the particular kind of case.' [Citation.] A party moving for summary judgment can rely upon admissions in an adversary's pleadings to establish facts in support of the motion."].)

### DISPOSITION

The judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.