Filed 9/17/14  Szumilar v. Wells Fargo Bank CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BOGDAN SZUMILAS, | B240261 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC093946) |
| v. | |
| WELLS FARGO BANK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Steele, Judge.  Affirmed in part and reversed in part.

Bogdan Szumilas, in pro. per., Plaintiff and Appellant.

Anglin Flewelling Rasmussen Campbell & Trytten, Robin C. Campbell, Robert Collings Little and Steven R. Telles for Defendant and Respondent Wells Fargo Bank.

Barrett Daffin Frappier Treder & Weiss, Edward A. Treder and Darlene P. Hernandez for Defendant and Respondent NDeX West.

_____

Plaintiff appeals judgment entered after the trial court sustained defendants Wells Fargo Bank, N.A. and NDeX West, LLC's demurrer to his First Amended Complaint based upon the 2011 foreclosure of plaintiff's home. Plaintiff contends the trial court erred in (1) taking judicial notice of defendants' documents, (2) finding that the statute of limitations barred his fraud claims, and (3) sustaining defendants' demurrer to his claims for fraud, negligent misrepresentation, wrongful foreclosure, and slander of title. We affirm in part and reverse in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*1.      Plaintiff's 2007 Refinance*

In 2002, plaintiff purchased his home at 5056 Varna Avenue, Sherman Oaks. The property was secured by a trust deed in favor of Bank of America. Plaintiff refinanced the property through Downey Savings & Loan in 2004.

In October or November 2007, plaintiff sought to refinance his property again. At the time, plaintiff was unaware that the housing market was deteriorating and home prices were falling. Plaintiff contacted Wells Fargo[1] in response to its marketing materials touting the benefits and safety of its loan products. The Bank conducted an appraisal of plaintiff's property, and plaintiff believes the appraisal valued his property at over $1.2 million.

In November 2007, plaintiff spoke with Shundale Hudson at the Bank. Hudson pitched an adjustable rate mortgage (ARM) loan product to plaintiff. During the discussion, plaintiff disclosed to Hudson that he was an immigrant from Poland and his work visa had expired. Hudson informed plaintiff that notwithstanding his expired work visa, plaintiff met the Bank's underwriting criteria and qualified for the loan. Hudson assured plaintiff that in spite of his work status, the value of the property would continue

_____

[1] Wells Fargo was the successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank. Although plaintiff originated the note and trust deed at issue here with World Savings Bank, for clarity (unless specific identification of the financial institution is necessary), we refer to the entity holding plaintiff's note and trust deed as "the Bank."

to go up and plaintiff would have no problem refinancing in the future. On December 18, 2007, plaintiff executed a trust deed in favor of the Bank (in this case, World Savings Bank) in the amount of $940,000. The trust deed was recorded January 2, 2008.

The Bank's loan commitment letter dated December 4, 2007, contained the terms of the loan and stated that the loan would be for $940,000 and the "index" would be the "'[the Bank's] COSI." Plaintiff "had no reason to believe that [the Bank], a large and well known financial institution in business for many years, would lie and make a large loan to him knowing that [plaintiff] was unqualified for said loan and that the odds that [plaintiff] would default on said loan and suffer foreclosure at some point were high." Nonetheless, believing such representations to be true, plaintiff relied on them and entered into the loan.

Plaintiff alleged that the Bank disregarded prudent underwriting standards in making the loan to plaintiff and knew that home prices were not rising but in fact were falling and that ARM rates were increasing at an "alarming rate," and thus that there was a reasonable likelihood plaintiff would default on the loan and would be foreclosed on. Plaintiff alleged that the Bank engaged in such practices with the business strategy of maximizing short-term profits from the high loan origination fees associated with riskier loans like the one sold to plaintiff and through the selling of securitized loans. Plaintiff alleged that his loan was securitized and that the Bank failed to disclose this fact.

2. *Plaintiff's 2008 Default and 2009 Loan Modification*

At some point after the loan was funded, plaintiff's work visa was not renewed. In July or August 2008, plaintiff began to have difficulty making the monthly payments on time. By December 2008, his loan was in arrears. The Bank sent plaintiff a "Notice of Intent to Foreclose" dated December 17, 2008. Around this time plaintiff became aware that the Bank had made false statements to him, "but [plaintiff] was still unaware of the full extent of the fraud or even that he had any actionable claim against [the Bank]." In January 2009, the Bank (Wells Fargo) completed its merger with Wachovia.

3

In early 2009, plaintiff contacted the Bank to obtain a loan modification and informed the Bank's representatives of the monthly payment he could afford. The Bank offered plaintiff a loan modification that "did little more than merge the defaulted payment amounts into a new loan amount to bring his account current" and did not lower the monthly payments in any way that would make the loan affordable to plaintiff in the long term. The loan was made on a "take it or leave it" basis. The payments were fixed, and plaintiff was told that if he made the new payments for at least 12 months he would be able to apply for a new loan modification with better terms.

Plaintiff continued to make the payments on the loan with his dwindling savings and credit cards until he was no longer able to make the payments. He contacted the Bank (now Wells Fargo) in June 2010 to request a new loan modification. He was told that the prior loan officer had given him the wrong information and that the Bank only allowed one loan modification to be made. Further, plaintiff discovered that his monthly payments were not fixed when he received a letter in July 2010 informing him that his monthly payments would be increasing. Plaintiff alleged that the Bank made representations to him about the loan modification that it knew to be false when made.

*3.     September 2010 Notice of Default*

Plaintiff was unable to make the monthly payments and on or about September 30, 2010, NDeX, as agent for the Bank as beneficiary, recorded a notice of default stating that $16,870.19 was unpaid.

After recordation of the notice of default, on November 2, 2010, NDeX recorded a substitution of trustee dated October 14, 2010, whereby the Bank substituted NDeX in as the new trustee. Plaintiff alleged the substitution was signed by a "robo signer." Plaintiff further alleged that the substitution of trustee was fraudulent because it was not executed by the lender, but instead by NDeX substituting itself as trustee in violation of the terms of the deed of trust. As a result, because the Bank lacked standing to record the notice of default and initiate foreclosure, NDeX lacked the authority to record the notice of default or execute a substitution of trustee.

4

A notice of trustee's sale recorded December 30, 2010 set a foreclosure sale for January 24, 2011. The notice of sale was executed by NDeX, as trustee.

   4.    *Plaintiff's January 24, 2011 Bankruptcy Petition; June 2011 Foreclosure Sale of the Property*

Believing that his best option was a short sale, plaintiff located a short sale buyer. Plaintiff believes the short sale buyer made an offer to the Bank, but the Bank declined the offer. On January 24, 2011, plaintiff filed a bankruptcy petition and served the necessary documents on defendants. Notwithstanding the automatic stay of bankruptcy, defendants proceeded with the trustee's sale and the property was purchased by the Bank for less than the amount offered by plaintiff's short sale buyer. The sale was rescinded when defendants realized the sale violated the automatic stay.

Plaintiff did not include any potential claims he had against the Bank or NDeX in his bankruptcy schedules. Plaintiff asserts his bankruptcy counsel did not inform him of any possible requirement that he list a claim against defendants for a yet unknown amount of damages for false statements.

On motion by the Bank, the automatic stay was lifted on May 12, 2011. Following the lifting of the stay, plaintiff read the documents associated with his loan and the communications he had with the Bank. Plaintiff spoke to an attorney specializing in foreclosures and read websites devoted to foreclosure issues. As a result of his research, plaintiff learned that defendants' conduct was actionable.

A second notice of trustee's sale was recorded May 30, 2011, setting a foreclosure date for June 20, 2011.[2] Plaintiff alleged that when a note is assigned, such assignment must be recorded; if there is a break in the chain of title the security has been broken and the note becomes unsecured. Here, he alleged the Bank's notice of default was null and void because the Bank did not have possession of the note and did not know who owned the note, and thus the current record beneficiary of the deed of trust was not the holder of

---

[2] The First Amended Complaint alleges a date of January 20, 2011, but this date appears to be in error.

5

the note. With the note and mortgage separated because the note was payable to one party and the beneficiary under the deed of trust was a different party, the obligation was unsecured.

On June 20, 2011, the Bank acquired the property with a credit bid of $634,661, less than 50 percent of the 2007 appraised value. A trustee's deed upon sale was executed July 28, 2011 and recorded August 1, 2011.

*5.  Plaintiff's June 2011 Complaint*

On June 16, 2011, plaintiff filed this action.[3]

Plaintiff's first amended complaint filed December 6, 2011 asserted claims for fraud (against the Bank), negligent misrepresentation (against the Bank), wrongful foreclosure (against the Bank and NDeX), slander of title (against the Bank and NDeX).[4] Plaintiff sought $1 million in damages and equitable relief, including cancellation of the deed of trust and trustee's deed on sale. Plaintiff sought punitive damages, interest, and attorneys' fees.

Plaintiff alleged as the basis for his fraud claim that in November 2007, the Bank made representations to plaintiff that it would make a loan that he could afford given his financial condition, plaintiff would not receive a loan unless he met the Bank's underwriting guidelines; in reality, the Bank knew these representations were false because it knew that plaintiff could not afford the loan and its underwriting practices were unsound, which greatly increased the risk plaintiff would default on the loan. In 2009, the Bank made a loan modification to plaintiff, but told him it was on a "take it or leave it" basis and if he made his payments for 12 months, plaintiff would receive an additional loan modification. When plaintiff sought an additional loan modification in

_____

[3] NDeX was added by Doe amendment on July 8, 2011. The matter was removed to federal court on August 5, 2011, and remanded to state court on September 20, 2011.

[4] The first amended complaint also stated claims for cancellation of instruments, quiet title, and declaratory relief. On appeal, plaintiff only challenges the trial court's rulings with respect to his first four causes of action (fraud, negligent misrepresentation, wrongful foreclosure, and slander of title).

6

June 2010 as his resources were dwindling, plaintiff learned his payment would be increased and he would not receive an additional loan modification, contrary to what he had been told.

Plaintiff's negligent misrepresentation claim alleged that the Bank had no reasonable basis for believing its representations to be true.

Plaintiff's wrongful foreclosure claim alleged that his loan was "securitized, sold or transferred to investors and that Defendants [did] not own the loan or the corresponding Note at the time of the foreclosure sale." He further alleged that none of the defendants legally assigned the note, and thus were not the real parties in interest. He alleged that the notice of default was signed by a "robo signer" "carrying a phony title" and who lacked personal knowledge of the facts. As a result, the notice of default was null and void and defendants violated Civil Code section 2923.5.

Plaintiff's slander of title claim alleged that defendants were not the trustee, beneficiary, or assignee of any note, deed of trust; the notice of default or notice of sale recorded against the property was wrongful; their conduct was not privileged; and defendants violated Civil Code section 2924, subdivision (a)(1)(C).

### 6.     *The Bank and NDeX's Demurrer*

On January 9, 2012, the Bank demurred, joined by NDeX, arguing that plaintiff was estopped to assert any claims against it because plaintiff failed to disclose his claims against it in his bankruptcy proceedings; plaintiff's fraud claim was time barred; on the merits, plaintiff's fraud and negligent misrepresentation claims lacked allegations of specificity, misrepresentation of a past or existing fact, or a fiduciary duty; plaintiff's wrongful foreclosure claim failed because the Bank was authorized to foreclose as the real party in interest; and plaintiff's slander of title claim failed because the Bank did not make a false publication and its recordation of the notice of default was privileged. The Bank also filed a motion to strike plaintiff's allegations relating to emotional distress, fraudulent conduct, damages suffered, and the punitive damage prayer. The Bank requested judicial notice of numerous documents, including the deed of trust, official

7

certification from the Comptroller of the Currency documenting Wachovia's merger with Wells Fargo, the notice of default, substitution of trustee and notice of sale, and plaintiff's bankruptcy petition, schedules, and order of discharge.

In opposition, plaintiff asserted his failure to list his claim against the Bank in his bankruptcy schedules was the result of ignorance and mistake and was not a bad faith attempt to defraud the bankruptcy court. On January 26, 2012, Plaintiff had filed a motion to reopen the bankruptcy case to add the claims to allow the trustee to pursue or abandon the claims, but the bankruptcy court ruled that there was "no bankruptcy purpose for reopening the case to list a potential claim in state court that was discovered and filed after the bankruptcy case was closed."[5] Further, the fraud claim was not time barred because plaintiff did not discover his cause of action until at the earliest December 2008, which was less than three years before the filing of his action in June 2011. On the merits, plaintiff asserted he pleaded his fraud claim with specificity, pointing to the Bank's representations in 2009 and 2010; in any event, he should be permitted to conduct discovery to find the names of individuals making such representations on behalf of the Bank. Plaintiff further asserts that such representations were not opinions because plaintiff was told he qualified for the loan, he could afford the payments because his property would continue to appreciate, and he would have no problem refinancing. Further, his wrongful foreclosure claim had merit because the Bank was not the real party in interest under the deed of trust, the substitution of trustee was defective, and the notice of default was null and void; his slander of title claim had merit because the FAC alleges that defendants lacked privilege to record the notice of default and notice of sale. Plaintiff opposed the Bank's motion to strike, asserting that he sufficiently pleaded fraud and malice to support punitive damages, pointing to his allegations that the Bank "did not care if [plaintiff] actually qualified for the loan or would likely default."

---

[5] In support of his opposition to demurrer, plaintiff requested judicial notice of numerous documents, including his filings with the bankruptcy court relating to the reopening of the case.

8

Plaintiff sought judicial notice of, among other things, his motion to reopen his bankruptcy case and the bankruptcy court's denial of that motion.

In reply, the Bank argued that its purported representations regarding plaintiff's future home values were opinions, its assessment of plaintiff's ability to repay his home loan or its statements on his ability to obtain future refinancing are not actionable because they were not a representations of a past or existing material fact; plaintiff's claims are time barred because the statute of limitations was not tolled, as plaintiff cannot plead he did not have notice of facts sufficient to put him on notice of any wrongdoing; plaintiff's wrongful foreclosure action failed because the fact the Bank is not the original holder of the note does not bar foreclosure.

### 7. Trial Court Ruling

The trial court sustained the Bank's demurrer without leave to amend. First, the court found that judicial estopped precluded plaintiff from asserting his claims against the Bank because plaintiff failed to list his claim against the bank in his bankruptcy schedules. The court found plaintiff's fraud claim lacked specificity. "Aside from naming one of defendants' employees, there is little more than this." Further, the bank's alleged misrepresentations that plaintiff's property would appreciate amounted to little more than nonactionable opinions and/or statements about future events, and in any event, plaintiff was not entitled to rely on a lender's assessment of whether he could afford a loan. For the same reasons, the court found plaintiff's negligent misrepresentation claim failed. Further, the fraud claim was time barred because plaintiff's loan closed December 18, 2007, meaning the allegedly false representations had occurred more than three years before the filing of plaintiff's complaint.

With respect to plaintiff's wrongful foreclosure claim, the court rejected plaintiff's contentions based upon the Bank's lack of possession of the note, citing *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*). The court concluded that plaintiff was not damaged by the securitization process because the process merely substituted one creditor for another. Lastly, plaintiff failed to state a

9

claim for slander of title because based on the foregoing, plaintiff could not establish a false publication or any financial loss based on defendants' conduct because he did not dispute he defaulted on the loan. The trial court took judicial notice on behalf of defendants of (among other documents) the trust deed, notice of default, substitution of trustee, and plaintiffs' bankruptcy petition, schedules, and discharge; the trial court also took judicial notice on behalf of plaintiff of (among other documents) plaintiff's motion to reopen his bankruptcy case and the bankruptcy court's denial of that motion.

## DISCUSSION

Plaintiff contends the trial court erred in (1) taking judicial notice of defendants' documents, (2) finding that the statute of limitations barred his fraud claims, and (3) sustaining defendants' demurrer to his claims for fraud, negligent misrepresentation, wrongful foreclosure, and slander of title. Respondents (the Bank is joined by NDeX in the Bank's arguments related to the claims for wrongful foreclosure and slander of title) contend the trial court properly took judicial notice of recorded documents; plaintiff fails to allege facts establishing the Bank was not entitled to initiate the foreclosure sale; plaintiff cannot allege any harm suffered from the trustee's sale; because plaintiff failed to schedule his claims against defendants, he is estopped from asserting them now; plaintiffs' fraud and negligent misrepresentation claims are barred by the statute of limitations; and NDeX was property appointed substitute trustee and its recordation of the foreclosure documents was privileged.

## I. Standard of Review

On appeal from a judgment of dismissal following an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that can be reasonably inferred from those pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We review the trial court's denial of leave to

10

amend for an abuse of discretion. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) "When a demurrer is sustained without leave to amend, we determine whether there is a reasonable probability that the defect can be cured by amendment. [Citation.]" (*V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 506.)

## II.     Judicial Notice

Plaintiff contends the trial court erred in taking judicial notice of defendants' recorded instruments and the facts therein, when the validity of those documents and the facts therein were subject to dispute. Plaintiff asserts that defendant's documents do not establish that the Bank was the real party in interest and true beneficiary of the deed of trust, or that the note was not securitized and sold to third parties, or that the notice of default and substitution of trustee were not fraudulent.

As a demurrer challenges defects on the face of the complaint, it can only refer to matters outside the pleading that are subject to judicial notice. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1008–1009.) We must take judicial notice of matters properly noticed by the trial court, and may take notice of any matter specified in Evidence Code section 452. (Evid. Code, § 459, subd. (a).) While we may take judicial notice of court records and official acts of state agencies (Evid. Code, § 452, subds. (c), (d)), the truth of matters asserted in such documents is not subject to judicial notice. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564–1565.) We evaluate the trial court's grant of judicial notice for abuse of discretion. (See *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549.)

"'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.'" (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) A trial court may take judicial notice of recorded deeds. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 977.) Courts may take judicial notice not only of the existence and recordation of recorded documents, but also matters that may be deduced from the

11

documents.  (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1118.)  In addition, although it is improper for the court to take judicial notice of the facts in recorded documents, the court may take judicial notice of the legal effect of the documents' language when the effect was clear.  (*Ibid.*)

*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 explained the role of judicial notice in the context of a demurrer to a wrongful foreclosure action based upon arguments that the beneficiary lacked the authority to foreclose and the assignment of trustee was defective.  The trial court can take judicial notice of the dates, parties, and legally operative language of recorded documents, but may not take judicial notice of the truth of factual representations made in such documents.  (*Id.* at p. 265.)  In sum, "a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity.  From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Ibid.*)

*Herrera v. Deutsche National Trust Co.* (2011) 196 Cal.App.4th 1366, upon which plaintiff relies, does not challenge these basic principles.  In *Herrera*, the court reversed summary judgment because the trial court had taken judicial notice of disputed facts recited in the recorded documents, including that the bank was the beneficiary under the deed of trust due to gaps in the assignment of the beneficial interest.  (*Id.* at pp. 1374–1376.)  Here, in contrast, there are no breaks in the chain of title; there can be no dispute the Bank is the successor in interest to World Savings Bank through name change and merger, or that NDeX is the proper successor trustee to the original trustee under the deed of trust.  Thus, the trial court properly judicially noticed recorded deeds and the recorded effect of such documents, namely that the parties to the instruments were the parties with the authority to execute them. (See *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 267, fn. 7.)

12

### III. Judicial Estoppel

Plaintiff argues the trial court erred in applying judicial estoppel based on his failure to schedule his claims against defendants in his bankruptcy proceedings because his failure to do so was based on ignorance and mistake and was not a bad faith attempt to defraud the bankruptcy court; further, at the time he filed his bankruptcy petition he did not contemplate a civil lawsuit against defendants and did not know the amount of his damages. He claims he did not know or was not advised by his bankruptcy counsel that he was required to list the claim against the Bank, and in any event, did not discover his claims against the Bank were actionable fraud until after the bankruptcy case was closed. Further, he filed a motion to reopen his bankruptcy case to list the claim, but the bankruptcy court denied the motion.

Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts. "'The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. [Citations.] The doctrine does not require reliance or prejudice before a party may invoke it.'" (*Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086, 1092.) The doctrine applies where a party has taken positions so irreconcilable that "'one necessarily excludes the other.'" (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 960.) The remedy is extraordinary and will only be invoked where a party's inconsistent positions will result in a miscarriage of justice. (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 511.)

In practice, judicial estoppel will be applied where "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial . . . proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as the result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) Although the majority view requires the party to be estopped to have been successful in asserting the earlier position,

under equitable principles, the doctrine may be applied even where the first position was not actually adopted by the tribunal. (*Id*. at p. 183, fn. 8.)

The application of judicial estoppel in the bankruptcy context provides that parties who fail to schedule potential claims in their bankruptcy actions are barred from asserting such claims in later proceedings. A debtor in bankruptcy proceedings has "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." (*In re Coastal Plains, Inc.* (5th Cir. 1999) 179 F.3d 197, 207–208.) Section 554, subdivision (c) of the Bankruptcy code (11 U.S.C. § 554(c)) provides that any property not otherwise administered in the bankruptcy proceedings is abandoned to the debtor. A corollary rule is that a "pre-petition asset which [is] not properly disclosed in a debtor's schedules is not deemed abandoned and remains property of the estate." (*In re Tennyson* (W.D. Ky. 2004) 313 B.R. 402, 405–406.) Where claims are not included in a debtor's assets, the bankruptcy trustee cannot evaluate the claims to determine whether they should be pursued by the bankruptcy estate. (*Id.* at p. 406.)

However, if the failure to schedule potential claims is the result of inadvertence, courts may decline to apply judicial estoppel. Judicial estoppel is not applied where the debtor lacks knowledge of the factual basis of the undisclosed claim, or where the debtor has no motive for concealment. (See *In re Coastal Plains, Inc.*, *supra*, 179 F.3d at p. 210; *De Leon v. Comcar Industries, Inc.* (11th Cir. 2003) 321 F.3d 1289, 1291.) Claimed lack of knowledge of awareness of the statutory disclosure duty is not relevant. (*In re Coastal Plains*, *supra*, 179 F.3d at p. 212.)

Here, we conclude judicial estoppel does not bar plaintiff's claims against defendants because plaintiffs' allegations establish his failure to schedule his claims against the Bank were the result of inadvertence. Although the FAC alleges plaintiff was aware that defendants had made false statements about his ability to pay the loan in July or August 2008, when he began to have difficulty making the payments on time, and certainly by December 2008, when his loan was in arrears, plaintiff further asserts that at

14

that time, he was "still unaware of the full extent of the fraud or even that he had any actionable claim against [the Bank]."

Furthermore, plaintiff's belated attempt to reopen his bankruptcy case does not bar his claims. Plaintiff did not realize the import of his failure to schedule his claim against the Bank until the Bank filed its demurrer, and plaintiff immediately moved to reopen his bankruptcy case to correct the omission. This conduct is equally consistent with a proper motive as with an improper motive. Therefore, at the demurrer stage, the trial court erred in finding judicial estoppel barred plaintiff's claim.

## IV.  Fraud and Negligent Misrepresentation

### A.  *Statute of Limitations*

A cause of action for fraud is governed by a three-year statute of limitations. (Code Civ. Proc., § 338, subd. (d).) The action accrues when the aggrieved party discovers the facts constituting the fraud. (*Ibid*.) "The courts interpret discovery in [the] context [of fraud] to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information [that] would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and not legal senses. [Citation.]  [¶] . . . '"Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run." [Citation.]'" (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374.)

Here, as discussed above, plaintiff was aware of his claims against the Bank in December 2008, less than three years before his complaint was filed in June, 2011. Thus, the statute of limitations is not a bar to plaintiff's claims against the Bank.

15

### B. Merits

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior* Court (1996) 12 Cal.4th 631, 638 (*Lazar*).) In contrast, a claim for negligent misrepresentation does not require knowledge of falsity; rather, the plaintiff must show "(1) the misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance . . . , and (5) resulting damage. (*Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.) Essential to both types of common law claims is a showing of reliance. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092.)

"[E]very element of the cause of action for fraud must be alleged in full, factually and specifically." The policy of liberal construction of pleading will not be invoked to sustain a defective pleading in any material respect. (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332.) "'Th[e] particularity requirement necessitates pleading *facts* that "show how, when, where, to whom, and by what means the representations were tendered."'" (*Lazar, supra*, 12 Cal.4th at p. 645.) Moreover, in fraud complaints against a corporation, the plaintiff must allege: (1) "'the names of the . . . persons who made the representations[; (2)] their authority to speak [for the corporation; (3)] to whom they spoke[; (4)] what they said or wrote[;] and [(5)] when it was said or written.'" (*Ibid.*)

Here, the FAC does not specifically allege (with one exception, the name of the bank's agent, Shundale, at the inception of the 2007 refinance) the persons making the representations, their authority, and the time of such representations. However, plaintiff has alleged that over the course of several years, from 2007 to 2010, various representations were made by different bank employees at the ever-changing parade of banks that held his loan. Plaintiff should have been granted leave to amend to plead with

16

more specificity the names, capacities, and statements of persons making representations to him to support his misrepresentation claims.

## V.      Wrongful Foreclosure

Plaintiff makes three arguments concerning his wrongful foreclosure claim. He contends the Bank was not the real holder of the note because it did not have physical possession and there were no assignments recorded in conformity with Civil Code section 2932.5 to perfect the chain of title; additionally, the substitution of trustee was void because the Bank was not the owner of the note and had no right to substitute NDeX as trustee; and finally, foreclosure cannot be initiated before the trustee is substituted.

"""[Civil Code s]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."""" (*California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070.) The power of sale in a deed of trust allows a beneficiary recourse to the security without the necessity of a judicial action. (*Melendrez v. D & I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1249.) Absent any evidence to the contrary, a nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly. (Civ. Code, § 2924, subd. (c).) However, irregularities in a nonjudicial trustee's sale may be grounds for setting it aside if they are prejudicial to the party challenging the sale. (*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097–1098.)

The "elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.) "'In order to challenge the sale successfully there must be evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person

17

attacking the sale. The mere inadequacy of price, standing alone, does not justify setting aside the trustee's sale, but the sale can be set aside where there is a gross inadequacy of the price paid at the sale, together with a slight irregularity, unfairness, or fraud.' [Citation.]" (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700.)

To address plaintiff's first contention, a party foreclosing on a deed of trust need not own or possess the underlying note. A homeowner who gives a deed of trust to secure his repayment of a home loan does not have standing to challenge the foreclosing party's authority to act on behalf of the deed of trust's beneficiary. (*Gomes*, *supra*, 192 Cal.App.4th at pp. 1154-1155 [rejected attempt to require proof of note's ownership]; *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 268 [citing *Gomes* for proposition that foreclosure statutory scheme "does not include a requirement that an agent demonstrate authorization by its principal" to initiate foreclosure]; accord *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 [rejecting contention that "no foreclosure of a deed of trust is valid unless the beneficiary is in possession of the underlying promissory note."].) The statutory scheme governing nonjudicial foreclosure "permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." (*Debrunner*, at p. 440.)

Second, there was no break in the chain of title. There can be no reasonable dispute that World Savings Bank became Wachovia, which was merged into Wells Fargo. An assignment need not be recorded to be effective between the parties; the purpose of recordation is to give notice to third parties. As explained in *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, "'[b]ecause a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing [plaintiff's] obligations under the note.'" (*Id.* at p. 515.) Further, "even if any subsequent transfers of the promissory note were invalid, [plaintiff]

18

is not the victim of such invalid transfers because [plaintiff's] obligations under the note remained unchanged. Instead, the true victim may be an entity or individual who believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." (*Ibid.*)

Third, the timing of the effect of the substitution of trustee is of no legal consequence to the ultimate validity of the foreclosure sale and plaintiff's entitlement to relief. Civil Code section 2934a, subdivision (a)(4) provides in part: "From the time the substitution is filed for record, the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust." Absent prejudice, any mistake in the execution and recording of the substitution does not warrant relief. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93–94 & fn. 9.) Here, plaintiff cannot allege he suffered any prejudice as a result of the sequence of the transfers. (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 231–232.) Although the substitution was recorded after the notice of default was recorded, plaintiff does not dispute that he was in default under the note and deed of trust.

Finally, plaintiff lacks standing to contest the transfers of the Note and deed of trust. The relevant parties to these transfers were the holders (transferors) and the third party acquirers (transferees). Plaintiff is not the victim of these transfers because as noted above, his obligation under the note remained unchanged. Plaintiff "may not assume the theoretical claims of hypothetical transferors and transferees" to assert a cause of action for wrongful foreclosure. (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 515.)[6]

---

[6] The Supreme Court granted review in *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted August 27, 2014, S218973, to address the issue of whether, in an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void.

## VI. Slander of Title

Plaintiff asserts that the FAC adequately alleges that defendants wrongfully and without privilege recorded the notice of default, substitution of trustee, notice of trustee's sale, and trustee's deed upon sale because he alleged that defendants knew that the Bank was not the beneficiary under the deed of trust.

Disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that "disparages title to property and causes pecuniary loss." (*Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925, 929.) "The elements of the tort are (1) publication, (2) absence of justification, (3) falsity and (4) direct pecuniary loss." (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 858.) What makes conduct actionable is not whether a defendant succeeds in casting a legal cloud on plaintiff's title, but whether the defendant could reasonably foresee that the false publication might determine the conduct of a third person buyer or lessee. (*Ibid.*; *Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 568.)

Here, there can be no slander of title resulting from a properly conducted nonjudicial foreclosure sale. Civil Code section 2924 provides that "[t]he mailing, publication, and delivery of notices as required herein . . . shall constitute privileged communications within Section 47." The Civil Code section 47 privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) Here, the Bank and NDeX were the proper parties to conduct the trustee's sale and therefore were privileged to record the notice of default and notice of trustee's sale.

## DISPOSITION

The judgment is reversed with respect to plaintiff's claims for fraud and negligent misrepresentation, and affirmed in all other respects.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.