[No. B224896. Second Dist., Div. Eight. June 1, 2011.]

HENRY HAMILTON et al., Plaintiffs and Appellants, v. GREENWICH INVESTORS XXVI, LLC, et al., Defendants and Respondents.

## COUNSEL

Ralph E. Harrison II for Plaintiffs and Appellants.

Barry, Gardner & Kincannon, J. Geoffrey Barry and Cathy A. Knecht for Defendant and Respondent Greenwich Investors XXVI, LLC.

No appearance for Defendant and Respondent Select Portfolio Servicing, Inc.

## OPINION

**GRIMES, J.—**

### SUMMARY

The trial court sustained a lender's demurrer to the borrower's complaint for breach of contract, fraud and statutory violations in connection with the lender's foreclosure of the mortgage loan on the borrower's home. The borrower's failure to disclose, in earlier bankruptcy proceedings, the existence of his breach of contract and fraud claims against the lender bars the borrower from litigating those claims now. The borrower's causes of action for breach of contract and fraud fail in any event because the borrower did not allege the essential fact of payment of sums due from the borrower or excuse from making those payments. In addition, the borrower cannot state a cause of action for violations of foreclosure statutes which require lenders to contact borrowers to explore options to avoid foreclosure, because the only remedy for such violations is postponement of the foreclosure sale, and borrower's house has been sold. We affirm the judgment dismissing the complaint.

### FACTS

Plaintiffs Henry and Sharon Hamilton filed this lawsuit against Greenwich Investors XXVI, LLC, and Select Portfolio Servicing, Inc. (SPS), successive

holders of a mortgage loan on their residence, in September 2009. Plaintiffs alleged defendants facilitated a fraudulent scheme designed to deprive them of their property; induced them to execute a forbearance agreement with the intent to deprive them of title to the property without notice of foreclosure; and engaged in predatory lending practices. We draw the following facts from the allegations of the complaint (assumed to be true for purposes of a demurrer) and from matters that may be judicially noticed.

Plaintiffs bought their home in January 2007. The initial lender transferred the mortgage loan to SPS. A notice of default on the mortgage loan was recorded eight months later, on September 13, 2007.

On December 8, 2007, plaintiffs entered into a forbearance agreement with SPS (identified in the agreement as the authorized agent of the holder of the loan, Greenwich Investors). The agreement recited that plaintiffs had failed to make timely payments on the loan and that a foreclosure action had been started. The forbearance agreement showed the total amount plaintiffs had to pay to cure the default was then $42,453.51, and required that plaintiffs pay the accumulated arrearage along with their regular monthly payment over a 10-month period. SPS agreed to forbear from exercising its rights, including pursuing the foreclosure proceedings, if plaintiffs made the payments required by the applicable due dates (beginning on Dec. 14, 2007, and concluding on Sept. 14, 2008).

Plaintiffs made only two or three payments to SPS under the forbearance agreement. Sometime before March 6, 2008, SPS notified plaintiffs that their loan had been transferred to Greenwich Investors, which would process all future payments. Plaintiffs did not receive any correspondence from Greenwich Investors after SPS notified them of the transfer of the loan, and they made no payments to Greenwich Investors.

After the loan was transferred, Greenwich Investors contacted plaintiffs and asked them to add Greenwich Investors to their insurance. "Plaintiffs inquired about their loan and requested mortgage statements for mailing payments. Plaintiffs also informed [Greenwich Investors] of the forbearance agreement . . . ." Greenwich Investors "refused to accept less than the total amount of the arrearages on the mortgage." Several weeks passed and plaintiffs received no correspondence from Greenwich Investors regarding mortgage payments. On March 6, 2008, plaintiffs "contacted [Greenwich Investors] again, in writing, and enclosed a copy of the forbearance agreement."

On August 12, 2008, several months after plaintiffs stopped making the payments scheduled in the forbearance agreement, plaintiff Henry Hamilton

filed a voluntary petition in United States Bankruptcy Court (ch. 13). Plaintiff filed schedules showing Greenwich Investors held a secured claim for approximately $688,000. On plaintiff's personal property schedule, which asks the debtor to describe and estimate the value of "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," plaintiff did not list any claim against or any right to a setoff against Greenwich Investors.

On about August 25, 2008, plaintiff proposed a chapter 13 plan, to which Greenwich Investors filed objections. Plaintiff filed several amended plans, culminating with a third amended plan on January 2, 2009. On February 2, 2009, the bankruptcy court confirmed the third amended plan, "without prejudice to the rights of secured creditors for post-petition defaults by the debtor." The confirmed plan called for plaintiff to make postconfirmation monthly mortgage payments directly to Greenwich Investors, and to cure all prepetition arrearages, which by then had grown to $58,514.50, by making monthly payments to Greenwich Investors of $1,045, with no interest.

Plaintiffs again defaulted, and filed this lawsuit on September 28, 2009. Greenwich Investors moved in the bankruptcy court for relief from the automatic stay, and the bankruptcy court entered an order terminating the automatic stay on December 2, 2009.[1]

On February 10, 2010, plaintiffs filed a second amended complaint. In addition to the facts already recited (except those relating to the bankruptcy proceedings, which were not mentioned in the complaint), plaintiffs alleged that Greenwich Investors never called or contacted plaintiffs about the forbearance agreement, but "[t]o Plaintiffs' surprise . . . eventually mailed Plaintiffs a notice of foreclosure and has refused to acknowledge the forbearance agreement . . . ." Plaintiffs alleged they were never served with a notice of default but Greenwich Investors had "recently served [plaintiffs] with a second Notice of Sale set for February 18, 2010." Based on these and the previously recited facts, plaintiffs alleged causes of action for breach of contract, fraudulent and negligent misrepresentation, and violation of the foreclosure statutes.

The gist of the alleged foreclosure violations was that defendants foreclosed on plaintiffs' property without adhering to statutory requirements.

---

[1] The motion was uncontested. The bankruptcy court found the filing of the bankruptcy petition "was part of a scheme to delay, hinder and defraud creditors that involved either: [¶] transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval[;] [¶] multiple bankruptcy filings affecting the Property." We do not take judicial notice of the truth of these findings. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1551 [8 Cal.Rptr.2d 552].)

Specifically, defendants did not contact plaintiffs or otherwise satisfy the due diligence requirements of Civil Code section 2923.5; did not satisfy the requirements for a declaration of compliance under section 2923.5; and "violated the duty under [Civil Code section] 2923.6 to agree to implement a loan modification or workout plan where the loan is in payment default . . . ." Further, defendants did not assess plaintiffs' financial situation, advise plaintiffs of their right to a meeting, or serve plaintiffs with a notice of default.[2]

On February 11, 2010, the trial court granted an ex parte application to enjoin the February 18 foreclosure sale, which was later reset for March 30, 2010. But the court denied plaintiffs' ex parte application to enjoin the March 30 foreclosure sale, brought only four days before the sale date. The court observed that "I think you are just stalling and trying to stall this sale"; that defendant Greenwich Investors had no opportunity to submit written opposition to the application and defendant's offer of proof was "a version of these transactions that is entirely different from the one [plaintiffs] are giving me"; and that the impending foreclosure sale date was "an emergency that you have created by waiting until the last moment to come in here."

On March 29, 2010, this court denied plaintiffs' petition for writ of mandate and request for a stay, observing that plaintiffs had failed to provide an adequate record.

Meanwhile, defendants demurred to the second amended complaint, asserting that because plaintiffs failed to disclose the existence of their claims against defendants in plaintiff Henry Hamilton's earlier bankruptcy proceeding, the claims were barred by the doctrines of res judicata and estoppel, and otherwise failed to state a claim on which relief could be granted. The trial court took judicial notice of the bankruptcy court documents and sustained defendants' demurrer without leave to amend. Judgment was entered, and the Hamiltons filed this appeal.

## DISCUSSION

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed.[3] (*Blank v.*

---

[2] Plaintiffs also alleged causes of action for quiet title, cancellation of cloud on title, and violation of the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.). These causes of action are derivative of or otherwise subsumed by our disposition of the claims discussed in the text.

[3] Plaintiffs contend that most of the documents judicially noticed by the trial court were not properly the subject of judicial notice because they were not certified copies and had no file

*Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*) Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. (*Ibid.*)

The trial court did not err in sustaining defendants' demurrer without leave to amend. Plaintiffs' contentions rest principally on their claim that the doctrine of judicial estoppel cannot bar this lawsuit because there was no evidence that plaintiff Henry Hamilton acted in bad faith in failing to disclose his lender liability claim in his bankruptcy filing. We find no merit in this or any of plaintiffs' other contentions, which we discuss in turn.

1. *The* Oneida Motor Freight *Rule of Equitable and Judicial Estoppel*

We conclude the demurrer was properly sustained on the estoppel ground established in *Oneida Motor Freight, Inc. v. United Jersey Bank* (3d Cir. 1988) 848 F.2d 414 (*Oneida Motor Freight*). There, the court applied doctrines of equitable and judicial estoppel to find a debtor's failure to disclose a lender liability claim in chapter 11 bankruptcy proceedings precluded the debtor from later litigating the claim.

The *Oneida Motor Freight* court observed that one seeking benefits under bankruptcy law must "satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." (*Oneida Motor Freight, supra*, 848 F.2d at p. 416.) "The result of a failure to disclose [any litigation likely to arise in a nonbankruptcy context] triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." (*Id.* at p. 417.) Judicial estoppel, which "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted," also barred the plaintiff's lender liability claim. The debtor's "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect"; the debtor's later lawsuit "speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed." (*Id.* at p. 419.)

stamps. The trial court observed that all documents could be verified by using the bankruptcy court's "webPACER" system; that plaintiffs did not dispute that the documents were what they purported to be; and that judicial notice was requested not for the truth of matters asserted in the documents but rather for the fact the documents were filed "and that they say what they say." We see no error.

The *Oneida Motor Freight* rule has been applied by California courts. In *Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086 [50 Cal.Rptr.2d 119] (*Billmeyer*), the court, while noting that the issue preclusion terminology used in the case precedents is variable, stated that " 'courts that have considered the effect of a debtor's failure to disclose a potential lender-liability lawsuit in a bankruptcy proceeding have universally held that the debtor is equitably estopped, judicially estopped or barred by res judicata from bringing the action after confirmation of the bankruptcy reorganization plan.' " (*Id.* at p. 1091, fn. omitted; see also *Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 160 [53 Cal.Rptr.2d 336] (*Conrad*) ["we find the rule expressed in *Oneida Motor Freight* and its progeny to be a bar to plaintiffs' claim for fraud since they failed to list or otherwise identify the claim in their bankruptcy proceedings up to and through the time the bankruptcy court issued orders confirming their reorganization plans"].)

Plaintiffs insist that the *Oneida Motor Freight* rule cannot be applied to them because cases decided after *Conrad* and *Billmeyer* say that judicial estoppel does not apply to nondisclosure unaccompanied by bad faith; that only the intentional assertion of an inconsistent position justifies the application of judicial estoppel; and that bad faith (or intent) is a factual matter that cannot be determined on demurrer. We find distinguishable the cases on which plaintiffs rely. Two cases are significantly different from the *Oneida Motor Freight* line of cases because they are not lender liability cases and do not involve defendants who were creditors in the earlier bankruptcy proceeding. (*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355 (*Ryan Operations*); *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995 [79 Cal.Rptr.2d 544] (*Cloud*).) The third case, *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110 [46 Cal.Rptr.3d 7] (*Gottlieb*), which acknowledges the *Oneida Motor Freight* rule, is based on the entirely different point that when the bankruptcy court dismisses a case without confirming a plan of reorganization, judicial estoppel does not bar a claim that should have been disclosed in bankruptcy, because nothing that happened in the bankruptcy court affected any unpaid creditor's right to pursue the debtor.

### a. *Ryan Operations*

In *Ryan Operations*, as in *Oneida Motor Freight*, the debtor (a home-builder) failed to list its claims against the defendants (suppliers of wood trim who were *not* creditors in the bankruptcy proceeding) on its schedule of assets. Later (while the bankruptcy proceeding was still pending), the debtor filed a breach of warranty suit against the defendants. (*Ryan Operations, supra*, 81 F.3d at p. 357.) The Third Circuit concluded that judicial estoppel would be inappropriate "as there is no evidence that [plaintiff] acted in bad

faith." (*Id.* at p. 362.) The court held that the doctrine of judicial estoppel does not apply " 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.' " (*Ibid.*) The court explained that in *Oneida Motor Freight*, there was ample evidence from which an inference of deliberate manipulation could be drawn, namely, "Oneida had listed its $7.7 million debt to the bank on its schedule of liabilities without mentioning the possibility of an offset." (*Ryan Operations*, at p. 363.) As a result, the creditors had a "skewed sense of Oneida's financial condition and no knowledge of a claim that could inure to their benefit," and the bank, had it known of the claim, might well have voted against approval of the plan.[4] (81 F.3d at p. 363.) And, since the gravamen of Oneida's later suit against the bank was that the bank's actions forced Oneida into bankruptcy, "it is clear that Oneida had knowledge of this potential claim at the time it filed for bankruptcy." (*Ibid.*)

By contrast, *Ryan Operations* was not a lender liability case; the later lawsuit did not involve a claim against a creditor in the bankruptcy. (*Ryan Operations, supra*, 81 F.3d at p. 359.) And, there was no basis for inferring that the debtor deliberately asserted inconsistent positions to gain advantage. (*Id.* at p. 363.) This was because "[the debtor's] failure to list the instant claims as contingent assets *was offset by its failure to list the corresponding claims of homeowners against [the debtor] . . . as liabilities.*" (*Ibid.*, italics added.) Moreover, under the debtor's reorganization plan, its creditors would receive 91 percent of any recovery on the debtor's claims against the defendants (and would bear the same percentage of the loss if the debtor were unable to recover the expense it incurred in repairing the defective trim from the defendants). Consequently—and unlike the case in *Oneida Motor Freight* and here—"it appears that [the debtor] derived and intended no appreciable benefit from its nondisclosure." (*Ryan Operations*, at p. 363.)

### b. *Cloud*

Next, plaintiffs rely on *Cloud, supra*, 67 Cal.App.4th 995, where the court held that the factual determinations necessary to support application of judicial estoppel could not be made on a motion for judgment on the pleadings. (*Id.* at pp. 1000, 1018–1019.) There, as here, the motion relied entirely on the plaintiff's complaint and documents from her bankruptcy proceeding, and the court pointed out that cases involving judicial estoppel

---

[4] In chapter 13 proceedings (as in this case), creditors do not vote on approval of the plan. "[I]n chapter 11 cases, debtors file disclosure statements and schedules on which creditors and the court rely to confirm plans of reorganization. In chapter 13 cases, debtors file schedules on which the chapter 13 trustee and the court rely to confirm chapter 13 plans. In those chapters, the discharge occurs only if the plan is confirmed; therefore, false statements in the schedules or disclosure statement are effectively 'accepted' by the Court." (*In re Miller* (Bankr. S.D.Tex. 2006) 347 B.R. 48, 55.)

"have generally been decided after a fact-finding or evidence-reviewing proceeding of some sort." (*Id.* at p. 1019.) The court observed that, as in *Ryan Operations*, "nondisclosure, and nothing more, is all that could be established in this case by a review limited to plaintiff's complaint plus her bankruptcy filings." (*Cloud*, at pp. 1019, 1020 ["[c]learly, consideration of whether a debtor has engaged in a deliberate scheme to mislead and gain unfair advantage, as opposed to having made a mistake born of misunderstanding, ignorance of legal procedures, lack of adequate legal advice, or some other innocent cause, requires consideration of the evidence"].)[5]

But *Cloud*, like *Ryan Operations*, was not a lender liability case and the defendant was not a creditor in the bankruptcy. Indeed, *Cloud* involved a chapter 7 (liquidation) bankruptcy proceeding. In *Cloud*, the plaintiff filed the bankruptcy proceeding without disclosing as an asset the claim or potential claim she had against her employer for wrongful termination and sexual harassment. She filed that lawsuit after her bankruptcy discharge but while the bankruptcy action remained pending. (*Cloud, supra*, 67 Cal.App.4th at pp. 998–999.) The court first found that the plaintiff had no standing to sue her employer; the causes of action she alleged were the property of her bankruptcy estate. (*Id.* at p. 1001.) The bankruptcy trustee could be substituted as the plaintiff in the lawsuit, or could opt to abandon the claim. (*Id.* at pp. 1000, 1005, 1008.) Because of the debtor's lack of standing to sue, "in the chapter 7 context, there is generally little need to ponder the possible application of judicial estoppel in a case in which the debtor has failed to schedule a claim." (*Id.* at p. 1020.) Once the trustee has either abandoned the case or substituted in, "no possibility of unfair advantage is apparent, and it appears doubtful that the types of findings discussed as necessary in *Ryan* could ever be made." (*Id.* at p. 1021.)

The *Cloud* court made a further point that illustrates the distinction between the *Oneida Motor Freight* line of cases and cases like *Cloud* and others (where the defendant in the lawsuit was not a party to the bankruptcy proceeding). *Cloud* observed that the "[p]rimary objectives of bankruptcy law"—giving the individual debtor a fresh start while equitably distributing his or her assets among the creditors—could be frustrated by application of judicial estoppel "in the absence of any basis for a res judicata finding": that is, where the later lawsuit is against a noncreditor. "It penalizes both the debtor and the creditors, while bestowing a windfall upon the third party noncreditor defendant, possibly the very party whose wrongful actions caused

---

[5] In *Cloud*, the factual issues in the case were highlighted by the plaintiff's declaration (which, while "not technically proper" and apparently not considered by the trial court, "illustrate[d] important reasons for [the court's] ultimate disposition"). (*Cloud, supra*, 67 Cal.App.4th at pp. 999, 1000.) Among other things, the plaintiff declared she did not know valid grounds existed for a lawsuit when she filled out her bankruptcy documents. (*Ibid.*)

or contributed to the bankruptcy and consequent loss to the debtor and creditors." (*Cloud, supra,* 67 Cal.App.4th at p. 1020.) That was obviously not the case in *Oneida Motor Freight,* and it is not the case here.

### c. *Gottlieb*

Plaintiffs also rely on *Gottlieb, supra,* 141 Cal.App.4th 110, where the court concluded that the doctrine of judicial estoppel did not justify summary judgment for the defendants where the plaintiff had failed to list his legal claims as assets in his earlier bankruptcy case. (*Id.* at p. 120.) In *Gottlieb,* however, the court found the doctrine did not apply because "the bankruptcy court did not adopt or accept the truth of [the plaintiff's] position that [the debtor] did not have any legal claims" and "the bankruptcy case was dismissed *without* confirmation of a plan of reorganization." (*Id.* at p. 130, italics added.) The *Gottlieb* court observed "[n]onbankruptcy courts, including those in California, have recognized that, in completing bankruptcy schedules, a debtor should list any legal claims against a creditor whose wrongful conduct caused the bankruptcy; otherwise, an action on the claim is barred." (*Id.* at p. 136.)

But the court found judicial estoppel did not bar the plaintiff's claims against a real estate lender, even though the plaintiff did not disclose its claim against the lender in the chapter 11 bankruptcy case, because the debtor "did not submit a reorganization plan, creditors did not accept a plan, and the bankruptcy court did not review or confirm a plan." Instead, the chapter 11 case "was dismissed without a determination as to any purported debts." (*Gottlieb, supra,* 141 Cal.App.4th at pp. 137–138, 141.) In *Gottlieb,* the debtor's nondisclosure "did not affect any unpaid creditor's ability to pursue [the debtor] for the full amount due . . . ." (*Id.* at p. 142.) In short, *Gottlieb* does not help plaintiffs here.

In sum, this case is not like *Ryan Operations, Cloud,* or *Gottlieb.* Here, plaintiff Henry Hamilton declared under penalty of perjury that the schedules he filed were true and correct, and he failed to list his claim against the bank, one of his principal creditors, in answer to an express question about counterclaims and setoffs. The complaint shows the events on which plaintiffs base their fraud and breach of contract claims against the bank occurred many months before plaintiff filed his bankruptcy proceeding, so he must have known of the facts allegedly justifying the claim, yet he failed to disclose the claim. Unlike *Ryan Operations* and *Cloud,* this *is* a lender liability case, like *Oneida Motor Freight.* The application of estoppel and res judicata principles will not, as in *Cloud,* bestow a windfall on a noncreditor defendant. There is nothing here to take the case outside the *Oneida Motor Freight* rule, reiterated in *Gottlieb,* that "in completing bankruptcy schedules,

a debtor should list any legal claims against a creditor whose wrongful conduct caused the bankruptcy; otherwise, an action on the claim is barred." (*Gottlieb, supra*, 141 Cal.App.4th at p. 136.)

2. *The Breach of Contract and Fraud Claims Fail Because Plaintiffs Do Not Allege They Performed or Were Excused from Performing Under the Forbearance Agreement and Make Only Conclusory Allegations of Fraud*

Even if the *Oneida Motor Freight* doctrine did not apply to bar plaintiffs' claims, plaintiffs have not otherwise stated legally sufficient claims for breach of the forbearance agreement or for fraud.

The essential elements of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [69 Cal.Rptr. 321, 442 P.2d 377].) Plaintiffs allege, as breaches of the forbearance agreement, that they "did not receive any documentation from [Greenwich Investors] once the loan was transferred" and Greenwich Investors "did not send Plaintiffs any mortgage statements" and "refused to acknowledge the forbearance agreement . . . ." But the complaint admits that SPS notified plaintiffs that their loan had been transferred to Greenwich Investors, which would process all future payments. More importantly, conspicuously absent from the complaint is any allegation that plaintiffs performed under the forbearance agreement or that they were excused from performing. Nor do plaintiffs suggest on appeal that they could amend the complaint to so state. Consequently, defendants' demurrer to this cause of action was properly sustained without leave to amend.

Plaintiffs' fraud and negligent misrepresentation claims are likewise defective. The essential allegations of a cause of action for deceit are representation, falsity, knowledge of falsity, intent to deceive, and reliance and resulting damage (causation). (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 710, p. 125.) "[F]raud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 [49 Cal.Rptr.2d 377, 909 P.2d 981].) The particularity requirement " 'necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered.' " [Citation.] A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Ibid.*)

■ Here, the complaint alleged plaintiffs were "instructed by [Greenwich Investors] to await notification from [Greenwich Investors] regarding the details of future mortgage payments under the forbearance agreement" and Greenwich Investors's "real intention in not speaking with Plaintiffs after the forbearance was executed [was] so that [defendants] could defraud" plaintiffs, and defendants "fail[ed] to disclose to Plaintiffs their intention to defraud Plaintiffs of their property . . . ." These conclusory allegations are far from specific enough to state a claim for fraud. Plaintiffs do not allege that Greenwich Investors actually told them not to make any payments while "await[ing] notification"; they do not say who at Greenwich Investors made any statements to them; they allege no facts showing defendants' "real intention" was to defraud them; and they do not say they could or would have made payments if only Greenwich Investors had not told them not to do so. In short, plaintiffs' allegations entirely fail to specify who said what to whom and how any such statements caused them harm. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, § 732, p. 153 ["[t]he essential element of causation is lacking unless the plaintiff sets forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault"].)

Again, plaintiffs do not tell us what they would add to their conclusory allegations if they were permitted to amend their complaint, and accordingly, the trial court properly sustained defendants' demurrer without leave to amend.

## 3. *The Claim for Violation of the Foreclosure Statutes*

■ As described above, plaintiffs alleged that defendants foreclosed on their home without contacting plaintiffs or otherwise satisfying the requirements of Civil Code section 2923.5. That statute, also known as the Perata Mortgage Relief Act, requires that, before a notice of default may be filed, the lender must contact the borrower to assess the borrower's financial situation and explore options to prevent foreclosure.[6] (*Mabry v. Superior Court* (2010)

---

[6] Civil Code section 2923.5 provides, in pertinent part:

"(a)(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g). [¶] (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free

185 Cal.App.4th 208, 213–214 [110 Cal.Rptr.3d 201] (*Mabry*).) Further, plaintiffs alleged defendants "violated the duty under [Civil] Code [section] 2923.6 to agree to implement a loan modification or workout plan where the loan is in payment default . . . ."[7]

These events occurred after the bankruptcy proceeding, and thus the claims are not barred by the principles described in part 1., *ante*. They are, however, legally insufficient under the principles discussed in *Mabry, supra*, 185 Cal.App.4th 208.

■ In *Mabry*, the court resolved several questions about Civil Code section 2923.5. As relevant here, *Mabry* held that section 2923.5 may be enforced by a private right of action; "[o]therwise the statute would be a dead letter." (*Mabry, supra*, 185 Cal.App.4th at p. 214.) However, the right of action "is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with section 2923.5." (*Ibid.* [§ 2923.5 is not preempted by federal law, "but, we must emphasize, it is not preempted because the remedy for noncompliance is a simple postponement of the foreclosure sale, nothing more"].) These points are discussed in detail in a thorough, lucidly written opinion to which we have nothing to add in our discussion here. (*Id.* at pp. 217–225, 226–232.)

telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

"(b) A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h).

"(c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: [¶] (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. [¶] (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made." (Civ. Code, § 2923.5, subds. (a), (b) & (c).)

[7] Civil Code section 2923.6 states in pertinent part: "(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties . . . or to all investors . . . , and that a servicer acts in the best interests of all parties . . . or investors . . . if it agrees to or implements a loan modification or workout plan for which both of the following apply: [¶] (1) The loan is in payment default, or payment default is reasonably foreseeable. [¶] (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis. [¶] (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority." (Civ. Code, § 2923.6, subds. (a) & (b).)

Here, the trial court enjoined the foreclosure sale once, but refused to do so a second time in response to plaintiffs' 11th-hour request, and this court denied a writ petition for lack of an adequate record. Plaintiffs have no further remedy for an alleged violation of Civil Code section 2923.5. There is no "duty" under Civil Code section 2923.6 to agree to a loan modification. (*Mabry, supra*, 185 Cal.App.4th at pp. 222–223 & fn. 9 [§ 2923.6 "merely expresses the *hope* that lenders will offer loan modifications on certain terms"; the statute "conspicuously does not require lenders to take any action"].)

## 4. *Amendment of the Complaint*

Plaintiffs assert they could amend their complaint to state a cause of action for unfair competition under Business and Professions Code section 17200 (forbidding unlawful, unfair or fraudulent business practices), based on Greenwich Investors's alleged violations of Civil Code section 2923.5. But plaintiffs cannot properly allege they lost money or property "as a result of" defendants' alleged violation of section 2923.5 (Bus. & Prof. Code, § 17204) for the same reasons already discussed. Plaintiffs' only right to relief under the statute was postponement of the foreclosure sale, and lenders are not required to take any action under the statute. (*Mabry, supra*, 185 Cal.App.4th at pp. 214, 222–223.)

## DISPOSITION

The judgment is affirmed. Greenwich Investors shall recover its costs on appeal.

Bigelow, P. J., and Flier, J., concurred.

On June 15, 2011, the opinion was modified to read as printed above.