Filed 5/25/16  Dagdagan v. Bank of America CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANACORETA DAGDAGAN, | B261467 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC027709) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William P. Barry, Judge.  Affirmed.

Stephen R. Golden & Associates and Stephen R. Golden for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Jonah S. Van Zandt for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff Anacoreta Dagdagan challenges the trial court's sustaining of a demurrer to her complaint for breach of contract and unfair business practices (Bus. & Prof. Code, § 17200) against defendant Bank of America, N.A. (BofA).  We affirm.

## BACKGROUND

According to plaintiff's operative second amended complaint (SAC) and documents attached thereto, in March 2005, plaintiff entered an "Equity Maximizer Agreement" with BofA for a $123,100 line of credit, secured by her residence (the Agreement).  She was able to obtain advances on the line of credit with "special convenience checks."  One term of the Agreement reserved to BofA the right not to honor those checks if they have been reported lost or stolen, or if they have not been signed by an authorized signer.  If BofA did honor a check, plaintiff agreed to repay the amount of the check.

The Agreement also included a "Billing Error Rights" page, informing plaintiff it contained "important information about your rights and our responsibilities under the Fair Credit Billing Act."  Among other terms, it required plaintiff to report any billing errors in writing within 60 days of the first bill on which the error appeared.  If so notified, BofA was required to investigate the error and report its results within 90 days.

In April 2011, plaintiff noticed activity on her account she did not authorize, and she notified BofA.  She received a phone call from a branch of BofA that someone had cashed a check against her line of credit.  It was made out to "Dyamond Shann" for $1,800 and bore plaintiff's signature.  The check was a forgery, so someone must have stolen it.

Plaintiff thereafter signed up with BofA for a program called "Privacy Assist Premier" to protect her accounts.  She also made "dozens" of visits to her local BofA branch and calls to BofA's fraud department to prevent further identity theft.  And she filed a police report regarding the forged check.

In May 2011, there was a spate of suspicious activity on plaintiff's account.  Two online advances totaling $62,000 were made from the account, which plaintiff disputed.

2

BofA honored the dispute and credited her account with $62,000. BofA also stopped six suspicious transactions and returned the withdrawn funds to plaintiff's account.

Also in May 2011, four checks were written totaling $18,700 and payable to plaintiff's son, Dino Dagdagan. She alleges these were also forged. She did not submit a fraud claim for these transactions to BofA until more than 18 months later in December 2012. BofA denied the claim because it was untimely submitted more than 60 days after plaintiff received her statement reflecting the disputed transactions. Plaintiff retained counsel, who requested BofA reconsider its denial. BofA did, but again denied the claim because it was untimely.

Plaintiff filed her original complaint in December 2013. She eventually filed her operative SAC, alleging BofA breached the Agreement and violated Business and Professions Code section 17200 by holding her responsible for the fraudulent transactions on her account. BofA demurred to the SAC, which the trial court sustained without leave to amend. The record on appeal does not contain the court's order or a reporter's transcript of the hearing on the demurrer.

## DISCUSSION

We review the sustaining of a demurrer de novo. Assuming all facts properly pleaded or reasonably inferred from the pleaded facts are true, we must determine whether those facts state a claim under any legal theory. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.) We may consider the truth of any documents attached to the complaint, and if they contradict factual allegations in the complaint, we give the documents credence. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.) We review the denial of leave to amend for abuse of discretion, deciding whether there is a reasonable possibility any defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The burden to show a reasonable possibility of amendment rests with the appellant. (*Ibid.*)

On appeal, plaintiff does not defend her breach of contract claim on the ground alleged in the SAC, and she does not address her unfair business practices claim at all. We find these points abandoned. (*Connerly v. State of California* (2014) 229

3

Cal.App.4th 457, 462 (*Connerly*); *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948.) Even if not abandoned, these claims fail on the merits. In the Agreement, BofA reserved the right not to honor stolen or unauthorized convenience checks, but if it opted to honor the checks, plaintiff agreed to pay the amounts. The Agreement also gave plaintiff 60 days to dispute any amounts, and she reported the forged checks made out to her son more than 18 months after they appeared on her statement. Thus, BofA complied with the terms of the Agreement by denying her claim as untimely. (See *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614 (*Hamilton*) [elements for breach of contract are "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff'"].) Plaintiff's unfair business practices claim is wholly derivative of her breach of contract claim, so it fails for the same reason.

Plaintiff raises several new theories on appeal to argue she has stated a claim based on the factual allegations in the SAC. We briefly address them, concluding none is meritorious. (See *Connerly, supra*, 229 Cal.App.4th at p. 462 [plaintiff may raise new theories on appeal from order sustaining demurrer without leave to amend].)

First, plaintiff attempts to support her breach of contract claim by arguing the Agreement was an invalid contract of adhesion because the 60-day time limit to submit her fraud claim was not conspicuous and did not fall within her reasonable expectations. "Although contracts of adhesion are generally enforceable according to their terms, a provision contained in such a contract cannot be enforced if it does not fall within the reasonable expectations of the weaker or 'adhering' party." (*Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1446.) A clause frustrates the expectations of the weaker party when it fails to give that party "plain and clear notice" of the term. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1057.)

We have reviewed the "Billing Error Rights" attached to the SAC, and we can say as a matter of law that none of the terms are inconspicuous or hidden such that they would have frustrated plaintiff's expectations under the Agreement. The time limit and

4

other clauses are stated plainly in a reasonably sized font, clearly spelling out plaintiff's and BofA's respective obligations, including that plaintiff was required to dispute any checks within 60 days of the payment appearing on her statement. Further, the time limit term could not have fallen outside plaintiff's reasonable expectations because the federal Fair Credit Billing Act *requires* consumers to submit a "billing error notice" within 60 days after being sent the disputed statement. (15 U.S.C., § 1666, subd. (a); 12 C.F.R. § 226.13(b)(1).) The "Billing Error Rights" page BofA included with the Agreement was nearly identical to the standard form required under the Fair Credit Billing Act. (12 C.F.R. § 226.6(a)(5); 12 C.F.R., pt. 226, appen. G, model form G-3.)

Second—and without citing any authority—plaintiff suggests BofA violated her "economic expectancy" in the Privacy Assist Premier program by not honoring her fraud claim. This appears to be another theory to support a breach of contract claim, but plaintiff has failed to set forth facts to support it, such as that (1) the Privacy Assist Premier program constituted a valid contract, (2) one of its terms required BofA to honor otherwise untimely fraud claims, (3) plaintiff satisfied any obligations she might have had in the program, and (4) BofA breached its obligations by rejecting her fraud claim. (See *Hamilton, supra*, 195 Cal.App.4th at p. 1614.)

Third—and again without citing any authority—plaintiff claims BofA fraudulently induced her to sign up for the Privacy Assist Premier program by representing she would be protected from the forged checks. But she has failed to set forth facts that might substantiate a fraud claim. "The essential allegations of a cause of action for deceit are representation, falsity, knowledge of falsity, intent to deceive, and reliance and resulting damage (causation). [Citation.] '[F]raud must be pled specifically; general and conclusory allegations do not suffice.' [Citation.] The particularity requirement '"necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.[']"'" (*Hamilton, supra*, 195 Cal.App.4th at p. 1614.) Plaintiff has utterly failed to identify who she spoke with at BofA, or what was said and when. She claims simply that the "circumstances surrounding" her signing up for the Privacy Assist Premier program led her "to believe she would not suffer liability

5

for the existing check forgeries that led to [BofA] offering the fraud protection services in the first place." This falls well short of the specificity needed to state a claim for fraud.

To the extent plaintiff alludes to additional issues in her opening brief, they are conclusory and unsupported by citations to the record or legal authority. We find them waived. (*1119 Delaware v. Continental Land Title Co.* (1993) 16 Cal.App.4th 992, 1004.)

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



WILLHITE, J.*

---

* Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6