Filed 9/12/16  Felix v. Fernandez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| EDITH FELIX,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RODRIGO J. FERNANDEZ,<br><br>    Defendant and Respondent. | D068505<br><br><br>(Super. Ct. No. 37-2014-00011367-CU-NP-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Keith H. Rutman for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Edward D. Vogel and Karin Dougan Vogel for Defendant and Respondent.

## I.

## INTRODUCTION

Edith Felix filed a form complaint against Dr. Rodrigo Fernandez alleging two causes of action, one styled as "intentional tort" and the second as "general negligence."

Felix's claims were premised on several statements that Dr. Fernandez allegedly made to her in the workplace, which Felix claimed caused her emotional distress. Dr. Fernandez filed a demurrer in which he maintained that Felix had failed to allege facts sufficient to state either claim. The trial court sustained the demurrer without leave to amend, and subsequently entered judgment in favor of Dr. Fernandez.

On appeal, Felix claims that Dr. Fernandez's remarks[1] were sufficiently outrageous to support a claim for intentional infliction of emotional distress. Felix also claims that her allegation that Dr. Fernandez breached a duty owed to her was sufficient to support a claim for negligent infliction of emotional distress.

We conclude that while the remarks that Felix attributes to Dr. Fernandez were "highly offensive," (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1049 (*Hughes*)), they were not so "outrageous" as to " ' " 'exceed[s] all bounds of that usually tolerated in a civilized community,' " ' " as is required to state a claim for intentional infliction of emotional distress. (*Id.* at p. 1051.) We also conclude that Felix has failed to adequately allege that Dr. Fernandez owed her a legal duty sufficient to support her negligence claim. Finally, Felix has not demonstrated that she could amend her complaint to remedy these defects. Accordingly, we affirm the judgment.

---

[1] In his demurrer, Dr. Rodriguez denied making the statements, but stated "for purposes of this demurrer only, the statements will be considered to be true." Further, given that we are reviewing an order sustaining a demurrer without leave to amend, we accept as true all material facts alleged in the complaint.

2

FACTUAL AND PROCEDURAL BACKGROUND

A. *The complaint*

Felix filed a form complaint against Dr. Rodriguez in April 2014 alleging claims for "intentional tort" and "negligence." As an attachment to the complaint, Felix provided a narrative containing the following allegations, which formed the factual basis for her complaint.

Since February 2011, Felix has been employed as a unit secretary at Fresenius Medical Care (FMC), Chula Vista Dialysis Center South (CVDCS). At the time of the filing of the complaint, Felix was 23 years old.

Dr. Fernandez, is a nephrologist affiliated with Sharp HealthCare who, pursuant to a contract with FMC, makes monthly rounds at CVDCS to attend to the medical needs of some of his patients. Shortly after meeting Dr. Fernandez, Felix "developed a feeling of unease in his presence due to his constant comments concerning h[is] perception of her young age." The comments included statements such as " 'why do have [*sic*] a high schooler working here,' " " 'she looks like she's still in high school,' " and " 'hola nina.' "[2] Dr. Fernandez made such comments in the presence of other staff and patients.

On February 19, 2014, Dr. Fernandez approached a nurse's station where Felix, Estela Gamboa (the charge nurse), and Sonia Barrera (another unit secretary) were working. Dr. Fernandez remarked to Gamboa, " 'Why do you have a little girl working

---

[2] Felix explained that "hola nina" is Spanish for "hello little girl."

here?' "  Felix interjected, " 'I'm not a little girl doctor.  I'm 22 years old.' "  Dr. Fernandez responded, " 'You look like you would still be in high school.' "

Dr. Fernandez asked Gamboa for a patient list.  Gamboa asked Felix to print the list.  As Felix began to comply with Gamboa's request, Dr. Fernandez again commented to Gamboa about Felix's age.  Gamboa responded, " 'Doctor[,] she has two kids.' "

As Felix started to step away from the nurse's station, Dr. Fernandez then stated, " 'What?!  That must have been rape.' "

Felix was shocked and extremely hurt by the comment.  However, she calmly replied, " 'Well no[,] I was 18 years old when I had my first child and I had already graduated high school.' "

Dr. Fernandez asked Felix, " 'Do you have any brothers?' "  After Felix replied that she had two brothers, Dr. Fernandez stated, " 'They must not have loved you, to have let you get pregnant.' "  Dr. Fernandez then stated, " 'My daughter is 18 years old and she knows that I own a Glock-45.' "

Felix was immediately upset by the comments.  Shortly after the exchange with Dr. Fernandez, Felix went into a lunch room and began to cry.  According to Felix, she had "never felt so belittled, disrespected, and degraded by a doctor."

Felix complained to her supervisors about Dr. Fernandez's conduct.  The following Monday, when Dr. Fernandez arrived at the CVDCS facility, he greeted Felix by saying, " 'Hola Nina.' "  This caused Felix to leave the facility in tears.  She was gone for approximately 45 minutes while she gained her composure.  Felix continued to feel "extremely uncomfortable" during subsequent interactions with Dr. Fernandez at the

4

facility. Eventually, "someone decided that Dr. Fernandez was no longer welcome at the CVDCS facility," and Felix has not seen him work at the facility since.

In an "exemplary damages attachment" to the complaint, Felix alleged that Dr. Fernandez's conduct was outrageous and went "beyond all possible bounds of decency." In support of this allegation, Felix alleged that Dr. Fernandez "abused a position of authority or a relationship (physician-medical secretary) that gave him real or apparent power to affect [Felix's] interests," and/or that Dr. Fernandez "knew that . . . [Felix] was particularly vulnerable to emotional distress," and/or Dr. Fernandez "knew that his conduct would likely result in harm" to Felix due to mental distress.

B.  *Dr. Fernandez's demurrer*

Dr. Fernandez filed a demurrer to both causes of action. Dr. Fernandez interpreted Felix's "intentional tort" claim as an attempt to state a claim for intentional infliction of emotional distress. Dr. Fernandez argued that Felix's allegations in support of this claim fell "woefully short" because the comments she attributed to him did not constitute "outrageous conduct" sufficient to state a cause of action for intentional infliction of emotional distress. In support of this argument, Dr. Fernandez maintained that the statements were "significantly less offensive" than statements that the Supreme Court in *Hughes* had concluded were not sufficient to support a cause of action for intentional infliction of emotional distress. Dr. Fernandez also argued that Felix had failed to sufficiently allege that she had suffered severe emotional distress, as required to state a claim for intentional infliction of emotional distress.

5

Dr. Fernandez argued that Felix's negligence cause of action failed because there is no duty under California law to avoid negligently causing emotional distress to another. Dr. Fernandez further argued that because "no duty exists, . . . [Felix's] negligence claim fails."

C. *The trial court's ruling*

After further briefing and a hearing,[3] the trial court sustained Dr. Fernandez's demurrer without leave to amend. With respect to Felix's intentional tort claim, which the court interpreted as a claim for intentional infliction of emotional distress, the court cited *Hughes* and concluded that Felix had "fail[ed] to allege outrageous behavior sufficient to state a cause of action for intentional infliction of emotional distress." With respect to Felix's negligence claim, the court ruled that there was "no special relationship between [Felix] and [Dr. Fernandez] that imposed a legal duty on the part of [Dr. Fernandez] to not cause [Felix] emotional distress." The court further noted that there is no independent tort for negligent inflection of emotional distress. In addition, with respect to both causes of action, the court ruled that Felix had failed to sufficiently allege that she had suffered severe emotional distress, which would be required to adequately state either claim.

The trial court subsequently entered a judgment in favor of Dr. Fernandez.

D. *The appeal*

Felix timely appeals from the judgment.

---

[3]   Neither Felix's opposition nor the reporters' transcript from the demurrer hearing is contained in the record.

6

DISCUSSION

A. *The trial court properly sustained Dr. Fernandez's demurrer to Felix's intentional infliction of emotional distress cause of action*[4]

Felix claims that the trial court erred in sustaining, without leave to amend, Dr. Fernandez's demurrer to her intentional infliction of emotional distress cause of action. Specifically, Felix claims that she alleged that Dr. Fernandez engaged in "conduct [that] was so extreme as to exceed all bounds of that usually tolerated in a civilized society," as required to support a claim for intentional infliction of emotional distress.

1. *The law governing review of an order sustaining a demurrer without leave to amend*

In *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, the court outlined the following well-established law governing the review of an order sustaining a demurrer without leave to amend:

> "A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. [Citation.] When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the

---

[4] In her brief, Felix makes clear that her claim, which is styled in her complaint as a claim for "intentional tort," is a claim for "intentional infliction of emotional distress."

complaint can be amended to state a cause of action." (*Id.* at pp. 1608-1609, fn. omitted.)

2. *The tort of intentional infliction of emotional distress*

In *Hughes*, *supra*, 46 Cal.4th at page 1050, the Supreme Court outlined the elements of a claim for intentional infliction of emotional distress:

> "A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' "

In defining the outrageous conduct element of the tort, the *Hughes* court stated:

> "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.]  And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' [Citation.]  [¶] Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' " (*Hughes*, *supra*, 46 Cal.4th at pp. 1050-1051.)

The *Hughes* court applied this law in considering whether a trial court had properly granted summary judgment on a plaintiff's claim of intentional infliction of emotional distress.[5] (*Hughes*, *supra*, 46 Cal.4th at p. 1050.)  In *Hughes*, the defendant was one of three trustees of a trust established by the plaintiff's ex-husband, before his death, for the benefit of their son, Alex. (*Id.* at p. 1039.)  Plaintiff requested that the

---

5    The *Hughes* court also considered whether the trial court properly granted summary judgment on plaintiff's sexual harassment claim. (*Hughes*, *supra*, 46 Cal.4th at pp. 1048-1050.)

8

trustees approve her request that the trust provide money for the two-month rental of a beach house in Malibu. (*Ibid.*) The trustees denied the request, but approved money to cover a one-month rental. (*Id.* at p. 1039-1040.) Approximately five days after the trustees conveyed this information to plaintiff's attorney, the following occurred:

> "[P]laintiff received a telephone call from defendant, to whom she had not spoken for at least three years. Defendant said he was calling to invite Alex, who was then 13 years old, to accompany him and his nine-year-old son to a private showing of the King Tut exhibit that evening at the Los Angeles County Museum of Art. The sponsor of the event was an investment bank, Goldman Sachs, which managed the assets of Alex's trust.
>
> "During the conversation, defendant called plaintiff 'sweetie' and 'honey,' and said he thought of her 'in a special way, if you know what I mean.' When plaintiff asked why the trustees had authorized payment for the Malibu house rental for just one month, defendant suggested that he could be persuaded to cast his vote for an additional month if plaintiff would be 'nice' to him. He added: 'You know everyone always had a thing for you. You are one of the most beautiful, unattainable women in the world. Here's my home telephone number and call me when you're ready to give me what I want.' Responding to plaintiff's retort that his comments were 'crazy,' defendant said: 'How crazy do you want to get?'
>
> "That evening, plaintiff took Alex to the private showing at the museum. Defendant was there with his son. After greeting Alex, defendant told plaintiff: 'I'll get you on your knees eventually. I'm going to fuck you one way or another.' " (*Id.* at p. 1040.)

The Supreme Court stated that "this crude statement, considered in the context in which it allegedly was made, is most reasonably construed as a threat that, unless plaintiff granted him sexual favors, he would use his authority, as a trustee of the trust set up for plaintiff's son Alex, to deny plaintiff's requests for funds." (*Hughes*, *supra*, 46 Cal.4th at

9

p. 1050.)[6]  Nevertheless, the *Hughes* court unanimously held that "defendant's

inappropriate comments *fall far short* of conduct that is so 'outrageous' that it

' " 'exceed[s] all bounds of that usually tolerated in a civilized community.' " ' "  (*Id.* at p.

1051, italics added.)  Accordingly, the *Hughes* court concluded that the trial court

properly had granted the defendant's motion for summary judgment.  (*Id.* at p. 1050.)

In *Haberman v. Cengage Learning, Inc.* (2009) 180 Cal.App.4th 365 (*Haberman*),

the Court of Appeal applied *Hughes* in concluding that the trial court had properly

granted judgment as a matter of law for defendant on plaintiff's claim of intentional

infliction of emotional distress "because the record does not contain any evidence

showing Haberman was subjected to 'extreme or outrageous conduct' by defendants as a

matter of law."  (*Id.* at p. 369.)  In *Haberman*, the plaintiff (Haberman), a sales

representative for a textbook publisher, brought claims for sexual harassment and

intentional infliction of emotional distress against her employer's national sales manager

(Bredenberg).  (*Id.* at pp. 368-369.)  The *Haberman* court noted that Haberman's claims

were premised on evidence of 13 instances of alleged harassment:

> "(1) at [a] 2005 conference, Bredenberg asked Haberman how she
> looked so pretty so early in the morning; (2) in 2005, Bredenberg
> spoke of his wife's recurrent battle with cancer and said he thought
> the next time around he would go for the younger ones because
> women in their 40's get sick; (3) in 2005, Bredenberg commented
> that a school administrator was 'hot for being an older woman'; (4) in
> August or September 2006, in response to a customer's compliment

---

6 The Supreme Court offered this interpretation of the defendant's alleged statement in the context of concluding that the trial court had properly granted defendant judgment as a matter of law on plaintiff's sexual harassment claim.  (*Hughes*, *supra*, 46 Cal.4th at p. 1050.)

10

of Haberman, Bredenberg told the customer that Haberman was amazing and had five children with no father in the picture; (5) at a conference in August 2006, he joked that his father, Richard, is referred to as 'Big Dick,' as opposed to Bredenberg (whose official first name is also Richard); (6) in the fall or winter of 2006, [another employee] asked Haberman whether she was seeing Bredenberg because he had said Haberman was ' "drop dead" gorgeous'; (7) on March 12, 2007, while they were separately parking for a convention, Bredenberg called Haberman on her cell phone and told her that he was coming right up behind her and it felt pretty good; (8) in 2007, Bredenberg asked Haberman if she was getting married; (9) in mid-April 2007 at the end of a conference, Bredenberg told her that an author of one of the textbooks they were selling had the 'hots' for her and asked whether she or Avery would ever go out with the author; (10) on May 16, 2007, Bredenberg told Haberman that his grief counselor advised him not to make any changes for one year, said he was not ready for a relationship, and said he just wanted to have sex, and Bredenberg asked Haberman what she thought, whether she had any friends who just wanted to have sex, and how she knew whether anyone was good in bed; (11) on July 26, 2007, Bredenberg and [Haberman's former supervisor] conducted a role-playing training session at Bredenberg's house; (12) on July 26, 2007, Bredenberg asked Haberman if she had any friends who just wanted to have sex; and (13) on October 13, 2007, Bredenberg told her that a customer's contractor had the 'hots' for her and wanted to date her."  (*Id.* at pp. 383-384.)

The *Haberman* court concluded that evidence of such instances "fell far short of establishing a hostile work environment," and "also fell 'far short of conduct that is so "outrageous" that it " ' "exceed[s] all bounds of that usually tolerated in a civilized community" ' " '  (*Hughes*, *supra*, 46 Cal.4th at p. 1051.)"  (*Haberman*, *supra*, 180 Cal.App.4th at p. 389.)

3.  *Application*

The comments that Dr. Fernandez made to Felix on February 19 were undoubtedly crude, insensitive, and reflective of gender and age stereotyping that would offend any

11

reasonable person. Such condescending and paternalistic comments concerning Felix's sexual history and her familial status are highly inappropriate. However, under *Hughes*, it is clear that Dr. Fernandez's conduct was not sufficiently outrageous to provide the basis for a claim of intentional infliction of emotional distress. In *Hughes*, the defendant abused his position of authority as a trustee in issuing a "threat" to plaintiff to engage in sexual activity with him. (*Hughes*, *supra*, 46 Cal.4th at p. 1049.) Further, the defendant in *Hughes* made a "vulgar and highly offensive" (*ibid.*) remark to plaintiff (" 'I'll get you on your knees eventually. I'm going to fuck you one way or another.' ") (*ibid.*) that directly reflected his aggressive sexual intent. Nevertheless, the Supreme Court concluded that the comments fell "far short" of conduct that was sufficiently outrageous to support an intentional infliction of emotional distress claim. (*Id.* at p. 1051.) In this case, Dr. Fernandez is not alleged to have abused his authority in an attempt to engage in sexual contact with Felix or to obtain some other benefit from her,[7] he did not use explicit language, and he did not threaten Felix.

While the comments that Dr. Fernandez made on February 19 were highly offensive, they occurred during a single short conversation. With respect to the remarks made on other days concerning Felix's youthful appearance, these comments were, at most, mildly insulting and annoying, and clearly do not support a claim for intentional

---

[7]  We are not persuaded by Felix's assertion in her brief that Dr. Fernandez "abused a relation or position that g[ave] him power to damage the plaintiff's interests (master-servant) . . . . " As discussed in part III.B, *post*, the complaint does not adequately allege that Dr. Fernandez and Felix were in any type of master/servant relationship. Further, the complaint does not allege that Dr. Fernandez made the offensive comments in order to obtain some benefit from Felix.

12

infliction of emotional distress. (See *Hughes*, *supra*, at p. 1051 [stating that a claim for intentional infliction of emotional distress does not lie for " ' "insults," ' " or " ' "annoyances" ' "]; *Haberman*, *supra*, 180 Cal.App.4th at p. 389 [concluding that comments that reflected "mild innuendo" (*id.* at p. 385) and were "too personal and [were] inappropriate for the workplace" (*id.* at p. 386) did not support a claim for intentional infliction of emotional distress].)

Felix's primary argument in her brief is that while a claim for intentional infliction with emotional distress premised on "sexually suggestive remarks" is not actionable under *Hughes* and *Haberman*, "comments about rape are actionable as a matter of law." We are not persuaded. To begin with, Felix cites no authority for the proposition that "comments about rape" are necessarily actionable, and we are aware of none. While Felix is certainly correct that rape "is not something . . . to be joked about or made light of," the mere fact that Dr. Fernandez's comment concerning rape was objectionable does not establish that he engaged in " ' " 'extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress . . . .' " ' " (*Hughes*, *supra*, 46 Cal.4th at pp. 1050-1051.)

Accordingly, we conclude that the trial court properly sustained Dr. Fernandez's demurrer to Felix's intentional infliction of emotional distress cause of action.[8]

---

[8] Felix does not contend that she could amend her complaint to allege additional facts to support the outrageous conduct element.

B. *The trial court properly sustained Dr. Fernandez's demurrer to Felix's negligence cause of action*

Felix claims that the trial court erred in sustaining Dr. Fernandez's demurrer to her negligence cause of action without leave to amend. Felix argues that the trial court erred "in determining a legal duty was lacking," and contends that she adequately alleged a "master-servant" relationship, which "created the applicable legal duty." We apply the standard of review outlined in part III.A.1, *ante*, in considering this claim.

1. *Governing law*

"[T]here is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984 (*Potter*); see *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1264 ["The '*negligent* causing of emotional distress is not an independent tort but the tort of *negligence,* involving the usual duty and causation issues' "].) Thus, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." (*Potter*, *supra*, at pp. 984-985.)

2. *Application*

Felix clearly did not allege that Dr. Fernandez had assumed a duty whose object was her emotional condition. (*Potter*, *supra*, 6 Cal.4th at pp. 984-985.) While Felix

14

contends that she adequately alleged the existence of a "master-servant relationship" between herself and Dr. Fernandez, her complaint alleged merely that she was a medical secretary, that Dr. Fernandez was doctor, and that Dr. Fernandez made rounds at the facility at which she worked "pursuant to a contract" with FMC, the entity for whom she worked. She did not allege, and has not suggested that she could allege, that Dr. Fernandez was her supervisor, her employer, or that he exercised any control over her.

More fundamentally, we are aware of no case law, and Felix cites none, suggesting that an employer owes a duty to his employees to refrain from *negligently*[9] inflicting distress.[10] Felix has not identified any other duty that Dr. Fernandez could have breached from which her emotional distress arose.

---

[9] The Supreme Court has stated, with respect to the tort of *intentional* infliction of emotional distress, "plaintiff's status as an employee should entitle him to a greater degree of protection from insult and outrage than if he were a stranger to defendants." (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499, fn. 2.)

[10] *Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88 (*Jacoves*), which Felix quotes in her brief, is clearly not such a case. *Jacoves* stated that a master-servant relationship is a relationship that may give rise to a duty in the master to control the conduct of his servants so as to avoid harming third parties. (*Id.* at pp. 114-115 [stating that ordinarily a "defendant has no duty to control the conduct of another," but that "there are judicially created exceptions which impose a duty on a defendant to control the conduct of others when the defendant stands in some special relationship either with the person whose conduct needs to be controlled or with the person who is the foreseeable victim"].) *Jacoves* is inapposite because Felix has not sued her employer and does not contend that Dr. Fernandez is liable for the conduct of a third party servant in harming her.

15

Accordingly, we conclude that the trial court properly sustained Dr. Fernandez's demurrer to Felix's negligence cause of action on the ground that Felix did not adequately allege that Dr. Fernandez breached any legal duty owed to her.

IV.

DISPOSITION

The judgment is affirmed. Felix is to bear costs on appeal.


AARON, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.